## THE UNITED STATES, *v.* WILLIAM MURPHY, AND WILLIAM MORGAN.

The owner of property, alleged to have been stolen on board an American vessel, on the high seas, is a competent witness to prove the ownership of the property stolen, on an indictment against the person charged with the offence, under the "act for the punishment of certain crimes against the United States," passed 30th April, 1790.

The fine imposed on the person who shall be convicted of the offence of stealing on the high seas, on board a vessel of the United States, is part of the punishment in furtherance of public justice; rather than an indemnity or compensation to the owner. From the nature of an indictment, and the sentence thereon, the government alone has the right to control the whole proceedings, and execution of the sentence. Even after verdict, the government may not choose to bring the party up for sentence; and if sentence is pronounced, and the fine is imposed, the owner has no authority to interfere in the collection of it, any more than the informer or prosecutor; and the fine, therefore, must be deemed receivable by the government, and the government alone.

In cases of necessity, where a statute can receive no execution, unless the party interested be a witness, there he must be allowed to testify, for the statute must not be rendered ineffectual by the impossibility of proof.

In cases where, although the statute giving the party or the informer a part of the penalty or forfeiture, contains no direct affirmation that he shall, nevertheless, be a competent witness, yet the Court will infer it, by implication, from the language of the statute, or its professed objects.

ON a certificate of division from the Circuit Court of the United States for the southern district of New York.

On indictment for stealing sovereigns, while on board the ship Carroll of Carrolton, on the high seas.

The defendants, William Murphy and William Morgan, were indicted under the sixteenth section of the act entitled; "an act for the punishment of certain crimes against the United States," approved on the 30th of April, 1790, for taking and carrying away with an intent to steal and purloin, on board of an American vessel on the high seas, one hundred and two gold coins called sovereigns, each of the value of five dollars, of the personal goods of Francis M'Mahon.

The defendants having pleaded not guilty, and the case being brought to trial, Francis M'Mahon, the owner of the property described in the indictment, was called as a witness on the part

of the United States, to prove the ownership of the said property, and that it had been stolen from him in June, 1840, in his passage on board the ship Carroll of Carrolton, from Liverpool to the city of New York; and also, to prove facts and circumstances tending to show that the defendants were guilty of the said offence; to the competency of which witness, as to either of the said matters, the counsel for the defendants objected, on the ground that he was interested in the event of the suit; and so interested that he would not be rendered competent by any release to be executed by him.

And hereupon the judges were divided in opinion upon the following questions which were presented for their decision.

1. Whether the said Francis M'Mahon, the owner of the property alleged to have been stolen, was a competent witness to be examined on the part of the United States, as to all the matters above mentioned?

2. If not competent to testify as to the guilt of the defendants, whether he was competent to prove the ownership of the property described in the indictment, and that it had been taken and carried away with intent to steal and purloin?

3. If not competent for both or either of the above purposes, without having released his interest in the fine to be imposed on the defendants in case of their conviction, whether, by releasing to the United States all his right to and interest in such fine, his competency would be restored?

Which said points, upon which the disagreement has happened, were stated above under the direction of the said Court, at the request of the counsel for the parties in the cause; and were ordered to be certified unto the Supreme Court of the United States at the next session, pursuant to the act in such case made and provided.

The case was submitted to the Court, without argument, on the part of the United States, by Mr. Legaré, attorney-general of the United States.

The counsel for the defendant, Mr. Nash, presented a printed argument.

First point.—The witness, Francis M'Mahon, the owner of the property charged to have been stolen, was not a competent wit-

ness to be examined on the part of the United States, in this cause.

The indictment is founded upon the sixteenth section of the act approved April 30th, 1790, being the act for the punishment of certain crimes against the United States.    (1 Story's edition of the acts of Congress, page 83.)

The section upon which the indictment is founded, among other things, declares that " if any person upon the high seas shall take and carry away, with an intent to steal or purloin, the personal goods of another, the person or persons so offending, their counsellors, aiders, and abettors, knowing of, and privy to the offence, shall, on conviction, be fined not exceeding fourfold the value of the property so stolen or purloined; the one moiety to be paid to the owner of the goods, and the other moiety to the informer and prosecutor."

In this case, the witness is both the owner of the goods and the informer and prosecutor; upon the conviction of the defendants, the whole fine against them must be paid to the witness direct, without any suit or further proceedings; the Court have no power to dispose of the fine in any other manner, and nothing can be inflicted upon the defendants on conviction, by way of sentence, but the fine; as whipping is abolished by the act of Congress.

The witness is directly interested in the sentence, the temptation to false swearing is great; immense; and increases just in proportion to the difficulties that surround the case to detect perjury.

Suppose the witness should swear that fifty eagles were stolen from his trunk, then the sentence might award him two hundred; should he swear that one hundred were stolen, the sentence might award him four hundred; and so on in an arithmetical ratio; while his testimony could be confined within the bounds of probability or possibility, no one could detect the falsity in regard to the number of pieces stolen; the starting point is in the dark, concealed in his own bosom; perjury could not be detected; he might safely allege his trunk to be full of gold, and no one be able to testify to the contrary.

Informers are generally incompetent witnesses, where they are to receive any portion of the decree, sentence, or judgment, without the necessity of a second suit.    The United States v. The

[The United States v. Murphy et al.]

schooner Thomas and Henry, Fletcher and Parker, claimants; 1 Brock. Rep. 374; Tilley's Case, 1 Strange's Rep. 316; Rex v. Stone, 2 Lord Raymond's Rep. 1545.

By the common law, informers who are entitled under the statute to part of a penalty are not competent witnesses. 1 Phillipps's Evidence, 125; 2 Phillipps's Evidence, 166.

In the present case, the act of Congress does not intimate that the informer is a competent witness; without the aid of the statute the informer is not a competent witness; the statute can receive execution without the party seeking to recover the penalty being admitted as a witness. Salisbury v. The state of Connecticut, 6 Conn. Rep. 101.

Second point.—The witness, Francis M'Mahon, was not competent to testify or prove the ownership of the property described in the indictment, and that it had been taken and carried away with intent to steal or purloin.

The witness, if sworn in the cause for one purpose, in chief, becomes a general witness for all purposes; he is not more interested in any one part of the controversy than in another; he does not come within the rule in Chancery, that a witness may be examined as to that part to which he has no interest. The witness once sworn in chief becomes a witness generally. Varick v. Jackson, and authorities there cited, 2 Wend. Rep. 166.

A person who has had his name forged upon an instrument is not a competent witness even to prove any fact besides the forgery which may contribute to the general conclusion of guilt; and in case of a person whose goods have been stolen, he was a competent witness at the common law, only upon the ground that the civil remedy was merged in the felony, and the party could not obtain restitution of stolen goods upon conviction: this was only to be obtained upon an appeal of felony. The statute of 21 Hen. 8, ch. 2, gave full restitution of the property taken, after the conviction of an offender of robbery. The writ of restitution was to be granted by the justices of the assize, and at the present day it seems that if the prosecutor has been guilty of any gross neglect in his duty to the public, in bringing the offender to justice, he will not be entitled to the benefit of the writ of restitution. 1 Chitty's Criminal Law, 7, 817.

The reason that a person is a competent witness at the common

[The United States *v.* Murphy et al.]

law to prove that his goods have been stolen by the defendant, and on such testimony to convict him, was, that the prosecutor could obtain nothing by the conviction of the defendant. The prosecutor whose goods have been stolen has been made a competent witness in a prosecution against the offender, upon whose conviction he obtains restitution of the goods, by force of the statutes; the statutes have made the prosecutor a competent witness; he is not such witness without the aid of the statutes, since he is to obtain restitution of his goods upon conviction. The difficulty in the present case in regard to M'Mahon is, that no statute of the United States has made him a competent witness; and without the aid of such a statute he cannot be a witness by the common law, as he is directly interested in the sentence.

Third point.—The witness, M'Mahon, cannot release to the United States his right to, and interest in, the fine to be imposed upon the defendants in case of conviction; and therefore his competency cannot be restored or created.

The United States are not authorized by law to take such a release; the right to a share of a penalty, or the whole of such penalty, cannot be released or assigned. Commonwealth *v.* Hergesheimer, 1 Ashmead's Rep. 415.

Nothing would exist to release or assign at the time of making the same; the right has not then accrued; an estate cannot be granted by deed to commence in futuro; such deed is void. See Coke on Littleton, 265.

The party may release a possibility coupled with an interest; but a naked possibility is not subject to a release. See Jackson *v.* Waldron, 13 Wend. Rep. 178.

Mr. Justice Story delivered the opinion of the Court.

This case comes before us upon a certificate of division of opinion of the judges of the Circuit Court of the southern district of New York, under the following circumstances:

The defendants, William Murphy and William Morgan, were indicted under the sixteenth section of the act entitled, "an act for the punishment of certain crimes against the United States," approved on the 30th of April, 1790, for taking and carrying away with an intent to steal and purloin, on board of an American vessel on the high seas, one hundred and two gold coins, called

sovereigns, each of the value of five dollars, of the personal goods of Francis M'Mahon.

The defendants having pleaded not guilty, and the case being brought to trial, Francis M'Mahon, the owner of the property described in the indictment, was called as a witness on the part of the United States, to prove the ownership of the said property, and that it had been stolen from him in June, 1840, in his passage on board the ship Carroll of Carrolton, from Liverpool to the city of New York; and also to prove facts and circumstances tending to show that the defendants were guilty of the said offence; to the competency of which witness, as to either of the said matters, the counsel for the defendants objected, on the ground that he was interested in the event of the suit; and so interested that ne would not be rendered competent by any release to be executed by him.

And hereupon the judges were divided in opinion upon the following questions, which were presented for their decision.

1. Whether the said Francis M'Mahon, the owner of the property alleged to have been stolen, was a competent witness to be examined on the part of the United States, as to all the matters above mentioned?

2. If not competent to testify as to the guilt of the defendants, whether he was competent to prove the ownership of the property described in the indictment; and that it had been taken and carried away with intent to steal and purloin?

3. If not competent for both or either of the above purposes, without having released his interest in the fine to be imposed on the defendants, in case of their conviction; whether by releasing to the United States all his right to and interest in such fine, his competency would be restored?

We have considered these questions: and I am now directed to deliver the opinion of this Court upon them. The first question presents, in its most general form, the consideration of the competency of M'Mahon, the owner of the goods alleged to have been stolen; and it must be admitted to involve no small difficulty, whether viewed in relation to principle or authority. The act of Congress (act of 30th of April, 1790, ch. 36, sec. 16) upon which this prosecution is founded, provides, "that if any person within any of the places under the sole and exclusive jurisdiction

[The United States *v.* Murphy et al.]

of the United States, or upon the high seas, shall take and carry away, with an intent to steal or purloin, the personal goods of another; or if any person or persons having at any time hereafter the charge or custody of any arms, ordnance, munitions, &c., &c., belonging to the United States, shall, for any lucre or gain, or wittingly, advisedly, and of purpose to hinder or impede the service of the United States, embezzle, purloin, or convey away any of the said arms, ordnance, munitions, &c., &c., the person or persons so offending, their counsellors, &c., &c., shall, on conviction, be fined not exceeding the fourfold value of the property so stolen, embezzled, or purloined; the one moiety to be paid to the owner of the goods or the United States, as the case may be, and the other moiety to the informer and prosecutor; and be publicly whipped not exceeding thirty-nine stripes."

It is not unimportant to observe, in the construction of this section of the act, that the fine is, as to its amount, purely in the discretion of the Court; that, whatever it may be, it rests on a mere contingency, even after conviction, whether it will ever be paid or not, depending upon the ability of the convict: and that if the fine is to be awarded as a part of the sentence of the Court upon the indictment, (as it seems properly to be,) then it must be taken to be a part of the punishment in furtherance of public justice, rather than an indemnity or compensation to the owner, since it may bear no proportion to his loss or injury. Besides, from the very nature of an indictment and the sentence thereon, the government alone has the right to control the whole proceedings and execution of the sentence. Even after verdict, the government may not choose to bring the party up for sentence; and if sentence is pronounced, and the fine is imposed, the owner has no authority to interfere in the collection of it, any more than the informer or prosecutor; and the fine therefore must be deemed receivable solely by the government; and then it is distributable by the government, and by the government only. It would indeed require strong language in any statute, where the proceedings were by indictment, to construe that indictment, or the sentence thereon, to be controllable by other parties who might have an interest in or under the sentence. In this respect there is a great difference between an information or action qui tam, where a part of the penalty or forfeiture belongs to the informer

s 2      27

or prosecutor, and an indictment, the conviction upon which may entitle the informer or prosecutor to a part of the penalty or forfeiture. In the former case, the informer or prosecutor may not be a good witness; at least not unless under special circumstances; in the latter case he may be: for notwithstanding a conviction upon the indictment, he must still sue for the penalty or forfeiture by action or information, and cannot receive it under the sentence upon the indictment. This distinction was adverted to by Mr. Justice Bayley, in delivering the opinion of the Court in The King v. Williams, (9 Barn. and Cress. 549,) upon which we shall have occasion to comment more at large hereafter.

The rules as to the competency of witnesses in criminal cases are not exactly and throughout the same in America as in England, although in most cases they concur. Thus, for example, in cases of forgery, the party whose name is supposed to have been forged is not a competent witness in England. But a different course has generally, although perhaps not universally, prevailed in America. So the owner of stolen goods has been universally admitted as a competent witness, in America, at least to prove the identity of his property and the fact of the theft, if not to prove all other facts, although, independently of the statute of 21 Hen. 8, ch. 11, his competency seems to have been a matter of doubt in England.

The general rule undoubtedly is, in criminal cases as well as in civil cases, that a person interested in the event of the suit or prosecution is not a competent witness. But there are many exceptions which are as old as the rule itself. Thus, it is stated by Lord Chief Baron Gilbert as a clear exception, that where a statute can receive no execution unless a party interested be a witness, there he must be allowed; for the statute must not be rendered ineffectual by the impossibility of proof. Gilb. on Evid. 114; 1 Phillipps on Evid. ch. 8, sec. 7, p. 125, edit. 1839 by Cowen. So cases of necessity, where no other evidence can be reasonably expected, have been from the earliest period admitted as another exception. Thus, for example, upon indictments for robbery, the person robbed is constantly admitted as a competent witness, although he will be entitled to a restitution of his goods upon conviction of the offender. 1 Phillipps on Evid. ch. 5, sec. 6, p. 120, edit. 1839, by Cowen. So in an action against

the hundred by the party robbed brought under the statute of Winton. he is admitted as a competent witness to prove the robbery and the amount of the loss; upon the acknowledged ground that it is from necessity in default of other proof. 2 Rolle Abr. 686; 1 Phillipps on Evid. ch. 5, sec. 2, p. 70, edit. 1839, by Cowen. Another exception, quite as remarkable, and standing upon a ground applicable to the present case, is that of a person who is to receive a reward for or upon the conviction of the offender; for he is universally recognised as a competent witness, whether the reward be offered by the public or by private persons. The ground of this exception is forcibly stated by Mr. Justice Bayley, in The King v. Williams, 9 Barn. and Cress. 549, 556, where he says: "The case of reward is clear on the grounds of public policy, with a view to the public interest; and because of the principle upon which such rewards are given. The public has an interest in the suppression of crime and the conviction of guilty criminals. It is with a view to stir up greater vigilance in apprehending, that rewards are given; and it would defeat the object of the legislature by means of those rewards, to narrow the means of conviction and to exclude testimony, which would otherwise be admissible. Another exception is, in cases where, although the statute giving the party or the informer a part of the penalty or forfeiture, contains no direct affirmation, that he shall nevertheless be a competent witness; yet the Court will infer it by implication from the language of the statute or its professed objects.

Several cases of this sort are collected and commented upon, by Mr. Justice Bayley, in the case of The King v. Williams, and they fully support the exception. Mr. Phillipps also, in his work on Evidence, has given a summary of the leading decisions, (1 Phillipps on Evid. ch. 3, sec. 7, p. 125, edit. 1839, by Cowen.) Indeed, Mr. Justice Bayley puts the exception, founded upon statute provisions, upon a very broad and comprehensive ground, which is fully in point in the present case. He says; "Where it is plain that the detection and conviction of the offender, are the objects of the legislature, the case will be within the exception; and the person benefited by the conviction, will, notwithstanding his interest, be competent." And in the very case then in judgment, which was a case for a forcible entry into a dwelling-house, on

the statute of 21 Jac. ch. 15, where the prosecutor would, upon conviction, be entitled to judgment of restitution of the premises, he was held incompetent, solely because (to use the language of the learned judge) "the public interest will still have the protection of a common law indictment; and there is nothing from which an inference can be drawn, that it was with a view to the public interest, and not for the sake of the benefit of the party grieved, that the provision for restitution was introduced into the statute." Now, every word of this passage shows, that in the case now before us, the party ought to be held competent. No common law indictment will lie for the offence, but only the statute remedy, and the statute is obviously drawn with a view to the public interest, and the suppression of public crimes; and not for the interest of the party aggrieved, since the fine is in the discretion of the Court, and may be purely nominal.

Looking to the objects of the present section, the promotion of public justice, and the suppression of public crimes, in which the government have a deep interest; and looking to the ordinary means by which the ends can be accomplished; it is difficult not to perceive, that if the owner of the stolen goods be incompetent, it will be found utterly impracticable, in most cases falling within the purview of the section, to procure any conviction, however frequent, or however flagrant may be the offence. The places on land where the offence may be committed are such, as being within the exclusive jurisdiction of the United States, contain but few inhabitants, or few whose residence is not transitory and changing. Take the case of a lighthouse establishment, where scarcely any other inhabitants are found but the keeper and his family; if he and his wife are excluded as witnesses from incompetency, how will it be practicable to establish the identity of the property stolen, or of the person of the thief, however atrocious and premeditated may be the circumstances under which the offence is committed? It may be in the night time; it may be in the broad day, even by a company of conspirators. But take the very case now in judgment, that of a theft committed on the high seas, where money is stolen from a passenger or an officer of the ship, or from one of the crew; who else besides himself can be expected to establish the identity of the property, or the circumstances of the theft? It is scarcely possible that it could be

done in one case in one hundred. Can Congress reasonably be supposed, in cases of offences committed upon the high seas, thus to have intended to shut out all the ordinary means and ordinary proofs of the offence; and thus to have given new encouragement, and new motives to theft, and embezzlement, and plunderage? We think not. Upon all the grounds of exception already stated; upon the ground of necessity, and of public policy, and of attaining the manifest objects of the statute, and the ends of justice; we think that the witness was admissible for all the purposes stated in the first question.

This decision is not new in America. On the contrary, the doctrine has been recognised, at least to an equal extent, in Connecticut and Massachussetts. In the case of Salisbury *v.* The state of Connecticut, (6 Conn. R. 101,) the judges of the Supreme Court of that state, held, that the owner of goods stolen, was a competent witness for all the matters in issue upon an indictment for the theft; although the statute declared that the thief, upon being convicted, should forfeit and pay treble the value of the property stolen to the owner thereof. It is true, that one main ground of this decision, by a majority of the judges, was, that there must be another action, qui tam, by the owner to enforce the forfeiture. But the same judges held, that in such an action qui tam, brought by the owner, he would be a competent witness to prove the loss and identity of his property, for the like reasons as, under the statute of Winton, the party robbed is admitted. In The Commonwealth *v.* Moulton, 9 Mass. R. 29, upon an indictment for theft, it was held, that the owner of the goods was a competent witness as to all the facts in the case; notwithstanding the witness would, by the statute, upon the conviction of the offender, be entitled to restitution of his goods; and, if they were not restored, to satisfaction out of the future earnings of the convict, and to recompense out of the county treasury for his labour and expense in the prosecution. Upon that occasion the Court said, that when (under a former statute) the party from whom goods were stolen, was by law entitled to treble the value, he was always received as a competent witness as to all pertinent facts.

As to the second and third questions, they do not require any particular examination, after what has been already stated. We have only to say, that if we had not been of opinion, upon the

first question, that the witness was a general witness, we should have entertained no doubt that he was a competent witness for the purposes stated in the second question, upon the ground of necessity, and the analogy to the case of the party robbed under the statute of Winton. And as to the third question, we should have no doubt, that if the witness had such an interest in the fine as would have rendered him incompetent, his competency might have been restored by a release. If, as the argument for the defendant seems to assume, the release is of a mere possibility, no release would be necessary; for a possibility of interest is no objection to the competency of a witness. If it is, on the other hand, a fixed interest in the event of the prosecution, then it is clearly releasable.

Upon the whole, we are of opinion, that all the questions ought to be answered in the affirmative. But, at the same time, we desire to say, that although a competent witness, the credibility of his testimony is a matter for the consideration of the jury, under all the weight of circumstances connected with the case, and his interest in the result.

We shall direct a certificate to be sent to the Circuit Court of the southern district of New York, accordingly.