## CHARLES L. PETTIGREW *vs.* ZENOS BARNUM and ANDREW McLAUGHLIN.

In an action against *an inn-keeper*, to recover the value of articles stolen from the plaintiff's *trunk* whilst he was a *guest* at the inn, the *contents* of the trunk, if he has no *other evidence* thereof, may, upon the ground of *necessity*, be proved by the *plaintiff's own oath.*

The inn-keeper is liable without regard to *actual fault* or *neglect* on his part, but such liability is limited to what is considered *baggage,* and does not extend to every article the guest may choose to carry with him; the term *baggage,* does not embrace *merchandize* or other valuables, not designed for *use* or *personal convenience,* on the journey.

An innkeeper is not liable for *silver knives, forks* and *spoons,* carried by the guest in his *trunk,* but is liable for *personal ornaments* or *jewelry,* appropriate for a traveller's wardrobe.

Where an offer is made of testimony, taken under a commission, part of which is admissible and part not, the party objecting should, if it can be done, confine his objection to that which is inadmissible.

But if the matters are so blended as to be inseparable, for the purpose of distinct objections, the objector may accomplish his object, by asking an instruction as to the applicability of the evidence, and its effect on the case or any branch of it.

It is no cause for the reversal of a judgment, that the court below rejected a prayer, even though correct in itself, if by a *previous* instruction which was *granted,* the court had given the law of the case to the jury, as favorably as the appellant could have desired.

A prayer, the subject of which is covered by previous instructions, ought not to be granted, because such repetitions are calculated to embarrass the jury, and may mislead them.

APPEAL from the Superior Court of Baltimore city.

*Trespass on the case* brought by the appellant against the appellees, on the 15th of February 1854, to recover damages for certain articles alleged to have been stolen from the plaintiff's *trunk,* while in the room occupied by him as a *guest* in a *hotel* kept by the defendants in the city of Baltimore. Plea *non cul.*

1*st Exception.* The plaintiff read in evidence the deposition of Miss Mary Pettigrew, taken under a commission, to the

effect that she was the sister of the plaintiff, and had travelled with him and his wife in Europe, during the summer of 1853 and on their return, while on their way from New York to Carolina, the party reached Baltimore on the 4th of November, and took rooms as guests at *Barnum's hotel*, to which their *trunks* were taken; that the trunks of the plaintiff and his wife contained jewelry and other articles, silver and wrought gold, and money; they were wedding presents of great value, and of costly workmanship; she remembers among them the following: A dozen large silver forks; a dozen large silver spoons; a dozen small silver spoons; a half-dozen silver knives; a dozen tea spoons; she thinks that was all the silver, cannot say what was their value; there was a small gold watch chain, and chatelaine worth $72; a small Venitian gold chain, the value of which she does not know; a small Venitian pin, to which was attached a gondola and gondolier, wrought in gold, which she thinks was valued at $2; a very handsome stone cameo brooch surrounded with pearls, which had a bracelet attached, and cost $150; a diamond ring that cost $150; a gold bracelet ornamented with a gold sprigg, that cost $30; a very curious purse of gold, wrought, that cost $40; these are all she can now recollect. She further deposes, that the trunks were not robbed before they reached Barnum's hotel; that she left Baltimore at half past two or a quarter of three, on the afternoon of the 5th of November, for Washington, and the plaintiff and his wife remained at the hotel; witness went out of the rooms, (her own adjoining that of her brother and his wife,) at half-past twelve of that day, and returned at two o'clock, and at a quarter-past two was in her brother's room, and saw no one there, nor did she witness any thing unusual in the appearance of things; an Irish girl named Alice, waited on the rooms; that she has since visited her brother and wife, and none of the articles above enumerated are in their possession.

The plaintiff then proved by the girl Alice, above named, that she was at the time and had been for several years a servant at Barnum's hotel, which is a common inn, kept by the defendants; that the plaintiff and his wife and Miss Petti-

grew, occupied two adjoining rooms with a door between them; that on the morning of the occurrences which gave rise to this suit, witness told plaintiff's wife she had better lock her room door, to which Miss Pettigrew replied, she was not going out that morning, and that witness then said to her, she ought to close and lock the door between her room and her sister's; that Miss Pettigrew took an early dinner that day, and some short time afterwards Miss Pettigrew called witness to her room and showed her her trunk considerably tumbled, some of her clothes on the floor and some of her silver lying on her clothes, and asked her who had been in her trunk? to which witness replied, that was best known to herself, (Mrs. Pettigrew,) that her sister had shortly before been in her room; witness told Miss Pettigrew that she, witness, had not taken them; Miss Pettigrew said she did not accuse her of having stolen them, but asked who had done so? that witness found the hall door of Mr. and Mrs. Pettigrew's room locked, but the door leading to Miss Pettigrew's room from the other, was open and so was the hall door of Miss Pettigrew's room; that Mr. Pettigrew shortly afterwards came in and said he had the key of his door in his pocket, and witness replied you have locked one door and left two open; he then said he would call Mr. Barnum; this was between two and three o'clock.

The plaintiff then offered in evidence a bill of discovery, which he had filed in the case, and the answer of Barnum, one of the defendants thereto, to the effect that the plaintiff and his wife and sister, stopped as guests at his hotel, on the 4th of November, and that Nos. 181 and 182 were the rooms assigned them, which were near the ladies' drawing-room on the second floor, and fronting the inner court; that the rooms adjoined each other and communicated by a door between them; that Miss Pettigrew left on the afternoon of the 5th, and the plaintiff and his wife, on the afternoon of the 7th; that during their stay, the plaintiff invited respondent to his room, and showed him his trunk; the trunk had not the appearance of having been broken open, nor was it broken open, but had the appearance of being opened by a false key, as represented to respondent by the plaintiff; the articles in the

trunk had the appearance of having been disturbed or rumpled; upon inquiring of the plaintiff, whether or not his door was locked? he said the door from the hall into his room was locked, but that between his room and that of his sister had been left open; that respondent sent for a police officer to look at the trunk, stating to him that the plaintiff said his trunk had been robbed, and respondent requested the officer to investigate the case; this was sometime during the afternoon of Saturday, but the exact time he does not now remember; no search was made among the servants or inmates of the hotel, as respondent believed his servants to be honest, and would keep none about him but such as he was assured were entirely honest.

The plaintiff's counsel then offered to read in evidence the *plaintiff's own deposition*, taken under a commission, in which, in answer to the *first* interrogatory, he states his arrival with his wife and sister at the hotel, how long they stayed, describes the situation of the rooms to which their trunks were taken, and says they contained articles of jewelry and ornaments belonging to dress, and other articles of silver. The *second* interrogatory is: "State whether any of the trunks belonging to you were robbed during your stay at Barnum's hotel as a guest? If so, state what articles were taken from it or them, and their values so far as you can give them; also state at what time you discovered that the robbery had been committed, and what steps you then took? Also state whether any of the articles stolen have been recovered by you?" In answer to this he says: "My wife's trunk was robbed during my stay at Barnum's hotel, the following articles were stolen from the trunk, viz: one dozen large silver forks, marked in German text C. L. P., valued at $130; one dozen large silver spoons, marked as above; one dozen silver dessert spoons marked as above, valued at $45; one dozen silver tea spoons marked as above, valued at $25; a half dozen silver knives marked as above, valued at $16.25; one small gold watch, double case, short chain, hook key, oblong seal, valued at $72; one Venitian gold chain, valued at $7; one Venitian gold pin, valued at $2; one cameo brooch, (to be worn as a pin or bracelet,) and surrounded by large pearls, valued at $150; one diamond, being a large one

set round with seven or nine smaller ones, valued at $150; one gold bracelet valued at $30; one gold purse of Italian workmanship, valued at $40; the said purse contained in specie $6.50; one old fashioned gentleman's watch guard, chain and knob, valued at $35; one pair gold earrings, value unknown. I discovered the robbery had been committed about two o'clock, P. M. I went immediately to Mr. Zenos Barnum, who was in the gentlemen's ordinary, and informed him of what occurred. I have recovered none of the above mentioned articles stolen from me."

This whole deposition was objected to by the defendants, and ruled out by the court. The plaintiff's counsel then offered in evidence the *second interrogatory* and the *answer thereto* as above set forth, to which evidence the defendant objected, and the court (FRICK J.) refused to permit the same to be given in evidence, and to this refusal to admit in evidence this second interrogatory and the answer thereto, the plaintiff excepted.

*2nd Exception.* It was then agreed that Graham, a police officer of long standing, was sent for by defendants, immediately on the occurrence of the alleged robbery, and directed to take all necessary steps for the detection of the thief, and that upon examining the trunk and looking into the circumstances attending the alleged robbery, he was of opinion (supposing a robbery to have taken place) it was the work of an experienced professional thief, and not of any servant of the hotel. The defendants then proved by one of their clerks in the office of their hotel, that there was in a conspicuous part of the office a secure iron safe for the safe keeping of money and valuables belonging to guests. They also offered in evidence a notice printed in large letters, to this effect.

"Gentlemen are requested to deposit their money and valuables in the iron safe at the office, and to bolt their doors on retiring to bed; coats, umbrellas and light articles, should be left at the ticket office where checks will be given for their safety. When leaving their rooms gentlemen are requested to lock their doors and leave the key at the office. It is hoped this arrangement will be strictly complied with, as the pro-

Pettigrew *vs.* Barnum, *et al.*

prietors will not hold themselves responsible for any losses that may occur, and it saves trouble when friends call if the key is in the office, that they may be reported as not being in their rooms."

It was proved, that a similar notice was placed on the inner side of the doors of the rooms in question, and of all the bed rooms in the house. Their clerk also proved, that it was his habit generally to give notice to guests, and universally, where he knew they had valuables in their trunks, to deposit them in the safe, but he does not recollect giving such notice to the plaintiff. Evidence was also given of the general good character and honesty of the servants of the hotel, and particularly of the servant Alice, the witness in this case; that watchmen were employed to keep guard at night, and that there were hall watches during the day; evidence was also given of the general excellence of the management and watching of the hotel, for the security of the property of guests in their rooms. It was also in evidence, that the servant, Alice, had a master-key by which she could enter the rooms in question, and that when on the morning of the alleged robbery, she told the plaintiff's wife she ought to lock the door between her room and that of her sister, she at the same time called her attention to the printed notice on the door. The plaintiff then prayed the following instructions to the jury:

1st. That by the law as it stood on and before the 1st of January 1854, an innkeeper was responsible for all losses happening to the goods of his guests, while they remained within the inn, unless such losses were caused by some agency, over which human power had no control, or by the act of the public enemies, or by the conduct of the guest himself or his servant, or a companion whom he chose to take with him, and that the innkeeper could not throw off or limit this responsibility, which the law imposed upon him, by such a notice as that offered in evidence in this case. Therefore, if the jury believe that the defendants kept a common inn in the city of Baltimore, and that the plaintiff with his wife and sister, were received by them into said inn as guests, and that a trunk belonging to the plaintiff, which contained jewelry, ornaments

of dress and other articles of value, the property of the plaintiff, was, at the same time received by the defendants into said inn, and that during the plaintiff's continuance there as a guest, and while the said trunk remained there, it was wrongfully opened, and things of value, the property of the plaintiff taken from it, and that all these occurrences took place before the first day of January 1854, then they are instructed, that they ought to find a verdict for the plaintiff, for the amount which they shall believe to be the value of the articles so stolen, unless they shall further find affirmatively, that the loss aforesaid was the direct consequence of the fault or negligence of the plaintiff, or of some companion or companions of his.

2nd. The jury are further instructed, that if they shall believe the facts set forth in the foregoing instruction, with the exception of fault and negligence on the part of the plaintiff, or his companion or companions, unless they are satisfied the plaintiff read the notice given in evidence in this case or knew its contents, or that one of his companions read it or knew of its contents, the defendants cannot derive any benefit from said notice.

The defendants then asked the following instructions: 1st. If the jury find from the evidence, that the plaintiff, his wife and sister, arrived together at the hotel of the defendants and occupied rooms Nos. 181 and 182, as stated in the evidence, and that the keys of said rooms were delivered to them, and their trunks placed therein at their request or with their consent, and also find that the articles, or some of them, to recover the value of which this suit is brought, were stolen from the trunk of the plaintiff while it was in said room so occupied by him, still the plaintiff is not entitled to recover, if the jury shall also find that the loss of said articles was the result of the negligence and want of care of the plaintiff, or his wife or sister.

2nd. If the jury shall find all the facts stated in the defendants' first prayer, except the negligence and want of care on the part of the plaintiff or his wife or sister, still the plaintiff is not entitled to recover, if the loss of the articles of value mentioned in the first prayer, was the result of no default, negli-

Pettigrew vs. Barnum, et al.

gence or want of care, on the part of the defendants or their agents or servants.

The court granted the plaintiff's first and rejected his second prayer, and also granted the defendant's first and rejected their second prayer. To the refusal of the court to grant his second prayer the plaintiff excepted, and the verdict and judgment being against him appealed.

The cause was argued before Le Grand, C. J., Eccleston, Tuck and Bartol, J.

Wm. S. Bryan and Henry Winter Davis for the appellant, argued:

1st. That it was competent for him to prove by *his own oath* the extent of his loss. The testimony of Miss Pettigrew, showed that the trunks when brought to the hotel contained valuable articles, most of them being such as were suitable to a lady's dress, and that at the time she left the hotel the trunk had not been robbed. The testimony of the servant Alice showed, that shortly afterwards it was discovered that Mrs. Pettigrew's trunk had been wrongfully opened and some of its contents taken out. The answer of Barnum, to the bill of discovery, showed also the violation of the trunk, and that the appearances indicated that a false key had been used. Miss Pettigrew's testimony further shows, that the articles enumerated in her deposition, were not in the possession of the plaintiff subsequently. These facts put the case clearly within the *exception* to the general rule, respecting the competency of the evidence of *parties to a suit.* 1 *Gilbert's Ev.*, 245. 2 *Rolle's Abr.*, 686. 2 *Evan's Pothier*, 308. 12 *Viner's Abr.*, 24, sec. 34 and 26, sec. 5. 1 *Greenleaf's Ev.*, sec. 348. 23 *Eng. C. L. Rep.*, 335, *Lancum vs. Lovell.* 1 *Greenleaf's Rep.*, 27, *Herman vs. Drinkwater.* 1 *Yeates*, 34, *Sneider vs. Geiss.* 3 *Barr.*, 451, *McGill vs. Rowland.* 8 *Watts & Sergt.*, 369, *Whitesell vs. Crane.* 11 *Missouri*, 230, *Sparr vs. Wellman.* 9 *Humph.*, 385, *Openheimer vs. Edney.* 11 *Humph.*, 419, *Johnson vs. Stone.* 16 *Pet.*, 203, *United States vs. Murphy.*

2nd. The appellant's second prayer correctly announced the law. The responsibility of an inn-keeper, for the loss of goods belonging to his guests, is settled by the law, and does not depend in any degree upon the assent of the inn-keeper himself. A notice that he will not be responsible for losses, is merely a denial of his fixed legal liabilities, which can have no effect. Still less could such a notice avail in the case, where neither the guest nor any companion had read the notice or knew of its contents, and when the loss occurred without any default or negligence on their part. The notice could not avail the inn-keepers, on the idea of a contract between them and their guest, because there can be no contract, unless the terms are, at least, *known* to *both parties.* Moreover, this action is not founded on a contract express or implied, but it is *ex delicto* for a *breach of a legal duty.* 8 *Coke,* 32, *Calye's Case.* 1 *Smith's Lead. Cases,* 47. 37 *Eng. Law & Eq. Rep.,* 176, *Cashill vs. Wright.* 22 *Eng. C. L. Rep.,* 186, *Kent vs. Shuckard.* Notes to *Coggs vs. Barnard,* in *Hare & Wallace's Ed. of Smith's Lead. Cases,* 266, 274 to 280. 6 *H. & J.,* 47, *Towson vs. Havre-de-Grace Bank.* 4 *H. & J.,* 391, *White vs. Wagner.* 6 *How.,* 344, 382, *New Jersey Steam Nav. Co., vs. Merchants Bank.*

*I. Nevitt Steele* for the appellees, argued:

1st. That the court did not err in refusing to permit the evidence offered in the first exception, to go to the jury. 1st. Because the plaintiff was not a competent witness in the cause. The *appellees* were not *in fault,* and by the English authorities, the rule which excludes a party from testifying in his own case, is relaxed only *in odium spoliatoris.* But he was at most, only competent to prove the *contents* of his trunk, while this second interrogatory and his answer thereto, are intended to, and do directly and positively prove the *fact of the robbery* and the circumstances attending it. 2nd. Because the *necessity* for the introduction of the plaintiff's own testimony, upon which alone, according to the *American authorities,* its admissibility could be founded, did not exist in this case. Miss Pettigrew's evidence establishes the fact, that the contents of

the trunk, with but one or two exceptions, were known to her, and can it be contended, that because of the failure of the memory of a competent witness, as to some of the articles, this makes a case of *necessity*, so as to allow the plaintiff to prove his own case ? 3rd. Because if the plaintiff's own deposition was admissible at all under the circumstances, (which is denied,) it was only admissible after the fact of the robbery had been satisfactorily established by evidence *aliunde*, and the evidence of that fact, offered in this case, was not sufficient to justify the admission of the interrogatory and answer, which the plaintiff proposed to read to the jury. For these positions see 1 *Greenleaf's Ev., sec.* 348. 12 *Metcalf*, 44, *Snow vs. The Eastern Rail Road Co.* 11 *Humph.*, 421, *Johnson vs. Stone.* 1 *Greenleaf's Rep.*, 27, *Herman vs. Drinkwater.* 11 *Missouri*, 235, *Sparr vs. Wellman.* 12 *Georgia Rep.*, 221, *Dibble vs. Brown, et al.* 2 *Car. & Payne*, 610, *Butler vs. Basing.* 9 *Eng. Law & Eq. Rep.*, 480, *Great Northern Railway Co., vs. Shepherd.*

2nd. That the court properly rejected the second prayer of the appellant. 1st. Because his *first* prayer gave him all the law he was entitled to, and in fact goes further than the second, and the granting, therefore, of this second prayer, would have been a matter of supererogation, and its refusal did the appellant no injury. 2nd. Because the notice referred to in this prayer, particularly after the attention of Miss Pettigrew had been called to it by the witness Alice, was evidence proper to go to the jury, upon the question expressly submitted to them by the first prayer of the appellant, and also by the first prayer of the appellees, as to whether the loss was the direct consequence of the fault and negligence of the plaintiff, or of some companion or companions of his. 3rd. Because the prayer says, the defendant can derive *no benefit* from the notice, which is equivalent to asking the court to *reject* the evidence, and the evidence being once in *without objection*, it was too late to make the objection afterwards. 8 *Gill*, 120, *Sparks vs. Dent.* 5 *Gill*, 120, *Dent vs. Hancock.*

TUCK, J., delivered the opinion of this court.

The appellant sued the appellees to recover damages for the

robbery of his wife's trunk, while a guest at their hotel. After having offered evidence tending to prove the robbery, the plaintiff proposed to show by his own testimony, taken under a commission, that the articles alleged to have been stolen were in the trunk, and the value of them. The entire deposition having been objected to, and rejected, he offered the second interrogatory propounded to himself, and the answer thereto, which were also objected to, and excluded, and to this last ruling the first exception was taken.

The question therefore is, how far, if at all, inn-keepers may be charged with such losses, upon the evidence of their guests? and when we consider the amount of travel in this country, the subject is of great interest to the community as well as proprietors of hotels. As the loss happened before the passage of the act of 1854, ch. 323, the case must be disposed of according to the law as it stood at that time.

The exception to the general law of evidence on which the appellant relies, was applied many years ago, in England, to the liability of carriers, and also in other actions, where the nature of the transaction did not admit of better evidence. It is said, however, that the rule which excludes a party from testifying in his own case, was relaxed in these instances, *in odium spoliatoris*, and that, as these appellees did not commit the wrong complained of, the case is not an exception to the rule. We are not satisfied that this is the only ground on which the admissibility of such proof depends. One of the earliest decisions was against a carrier, where it did not appear that he had converted the box to his own use; and in another, under the *Statute of Winton*, the inhabitants of the hundred were as guiltless of the robbery, with the consequences of which they were charged, as are the appellees here. As against a defendant who had himself committed the act, and possessed the means of showing the damage, by producing the articles, the strongest presumptions would arise, and in such a case the plaintiff's oath would be received with greater propriety, *in odium spoliatoris*. And the same reason would apply in criminal prosecutions. 6 *Md. Rep.*, 88. *Broon's Maxims*, 425. 116 *Peters*, 203. But even then the admissibility of

the proof in civil actions would depend on the nature of the case; for there are many *torts* which go unredressed, by defect of competent evidence, though the acts complained of are of the most grievous and oppressive character; for the reason, that as a general rule, actions *ex delicto* as well as those *ex contractu*, must be supported by the oaths of disinterested witnesses. Where these are not to be had justice often fails, and the wrong-doer succeeds, unless the case be excluded from the operation of general principles.

But the cases which appear to be the foundation of this doctrine, do not place it on the ground suggested in argument. *Ch. Baron Gilbert*, *(Ev.*, 128, 129,) speaking of actions under the *Statute of Winton*, says: that the exception was introduced, because the remedy would be totally denied to the party, if he were not accepted as a witness, inasmuch as, "no person can be supposed present in such transactions to give their evidence." As showing early authority for this exception, now for the first time applied in this court, and to place its introduction on what we consider the proper basis, we give at length two cases which we find referred to, and recognized in almost all the elementary works, and in most of the reported decisions, on this branch of the law.

In 12 *Viner*, 24, *pl.*, 34, it is said: "On a trial at Bodmyn, *Coram* Montague B., against a common carrier, a question arose about the things in a box; and he declared that this was one of those cases where the party himself might be a witness, *propter necessitatem rei*. For every one did not know what he put into his box." The case of *Bennet vs. Hundred of Hertford*, 2 *Rolle*, 685, is thus rendered, in *Norris' Peake*, 223, note: "In an action against a hundred, brought by the master, being a carrier, for a robbery committed on his servant in the absence of the master, *quere*, whether the master, being the plaintiff in the action brought, may be a witness to prove that he delivered the moneys, of which his servant swears he was robbed, before his servant set out on his journey in which he was robbed ? for this might be proved by any other, and no person is to be a witness in his own cause, but for necessity; as if he himself had been robbed, although that

he was plaintiff, yet he might be a good witness to prove himself to have been robbed, and of what sum or things, and also to prove that he gave notice to the next ville and levied hue and cry, for this is of necessity for default of other proof. But as to proving the delivery of the money to his servant before the robbery, and before he set out on his journey, this might be proved by any other as well as by him, although it was objected, that it is not safe nor usual for men to call witnesses, when they deliver money to carry on a journey, on account of the danger of discovery, and for this reason *per curiam*, against my opinion, it was ruled that he should be received as a witness." And in the same note, it is said, that a similar case occurred before Mr. Justice Chambre, (in 1802, M. S.,) where a mob having robbed the plaintiff's barge of corn, which was carried in it, that part of the case was proved by the servant, but he not knowing the quantity on board, and this case (in *Rolle*,) being cited, his lordship, on the authority of it, allowed the plaintiff to be examined to prove that fact. *Bullers N. P.*, at page 289, states as an exception to the general rule, that "a party interested will be admitted, where no other evidence is reasonably to be expected," and in *Lancum vs. Lovell*, 9 *Bingh.*, 465, (23 *Eng. C. L. Rep.*, 335,) it was held, by the fourteen judges, that the case before them, an action for toll claimed on a road, came expressly within this exception of Mr. Justice Buller, because the nature of the case was such, that no other proof could reasonably be expected than that offered. See also 1 *Phillip's Ev.*, 59.

These cases show, that the admissibility of such proof is recognized in England as established law, and that this exception is founded upon necessity, and was allowed for the attainment of justice, in certain cases, in which it would fail if the ordinary rules were applied.

The same point has been frequently ruled in this country, where the question appears to have arisen oftener than in England, and with a single exception, as far as we are informed, the decisions have followed the English doctrine. The only case the other way is that of *Snow vs. The Eastern Rail Road Co.*, 12 *Metcalf*, 44. The cases referred to by the ap-

pellant's counsel, indicate that inn-keepers, carriers, railroad and steam boat companies, and stage owners, have been deemed as coming within the exception, and that necessity has been considered as fully justifying a departure from the general rule. *Greenleaf*, ( *Vol.* 1, *sec.* 348,) says: "Such evidence is admitted, not solely on the ground of the just odium entertained, both in equity and at law, against spoliation, but also because, from the necessity of the case and the nature of the subject, no proof can otherwise be expected; it not being usual even for the most prudent persons, in such cases, to exhibit the contents of their trunk to strangers, or to provide other evidence of their value." *Ibid.*, *sec.* 349. *Clark vs. Spence*, 10 *Watts*, 335. *United States vs. Murphy*, 16 *Peters*, 203.

This application of the law of evidence to inn-keepers, is quite compatible with, nay, in most cases necessary, to insure the performance of the duties assumed by the landlord. In considering the rights and obligations arising out of particular relations, it is competent for courts of justice to regard considerations of policy and general convenience, and to draw from them such rules as will, in their practical application, best promote the safety and security of all concerned. Hence, common carriers and inn-keepers, are made liable without regard to actual fault or neglect, because they can best guard against danger, and because, in case of loss, it would be difficult for the owner to adduce proof of embezzlement or other actual fault or neglect on the part of the defendant. Landlords can secure the attendance of faithful servants and guard their houses against thieves. "The rule is founded on the expediency of throwing the risk upon those who can best guard against it." *Farwell vs. Boston & Worcester R. R. Co.*, 4 *Metcalf*, 49. When a person opens an inn, he assumes a relation to the public which renders this mode of proof necessary to the protection of his guests. Whilst at large they may take measures to secure their baggage, but arrived at the hotel, the traveller has little agency in the means employed to that end. These depend on the regulations of the house, with which he has nothing to do. The baggage comes under the care of the establishment, and this custody is assumed as part

of the service to be rendered for the price to be paid. The proprietor stipulates for the honesty of his servants, and for the safety of baggage, except as against losses by means not necessary to mention in this case. And, because it is not tolerated that trunks shall be subjected to inspection, nor indeed supposed that landlords desire such exposure of private baggage; and because travellers are not expected in anticipation of probable loss, to have persons attending their movements, and noticing what they put in, and what they remove from their trunks, from time to time, the law, upon grounds of necessity and general convenience, allows a party to be his own witness. If this were not so, it would be a complete immunity to the inn-keepers; contrary to one of the conditions on which he and his guest are presumed to come together, viz., that his baggage shall be safe. For, we may as well declare, at once, that the guest shall be his own insurer, while at the inn, as to deny to him the only evidence which he can reasonably be expected to furnish in case of loss.

It may happen, as suggested in the argument, that mischief will result, by enabling dishonest persons to perpetrate frauds. This, however, may occur in any case where controversies are to be determined by oral testimony; for all suitors subject themselves to the risk and consequences of false swearing by the witnesses of their adversaries. It is true, that the interest which a party feels in the result, is a greater temptation to perjury than is presented to witnesses in general, but this consideration must yield to the necessity of the case, and the peculiar relations of persons in the predicament of these parties. The defendant, however, is allowed the benefit of the new character which the plaintiff assumes on taking the witness' stand. He may be cross-examined, impeached or rebutted, nd dealt with, in all respects, like other witnesses; and, in many cases, a searching examination of the party himself, as to his position, means and habits, will furnish the most certain test as to the probability, that the trunk contained the articles in respect to which the action may be brought.

The introduction of a party's oath, as we have seen, depends on the nature of the subject, and the necessity of the

case. If he has disinterested witnesses to prove what the law would otherwise allow him to show by his own oath, they should be produced. Hence, in this case, the position of the appellees' counsel, that Miss Pettigrew's deposition proved all that the plaintiff proposed to establish by his own, would be an answer to the offer of the plaintiff's oath, if they had proved the same facts. But, on examining her evidence, we find that she knows nothing of the circumstances, (having previously left the hotel.) All that she says, bearing on this point, is, "I do know that the *trunks* referred to, contained articles of value." Again, she says, "the *trunks of plaintiff and his wife*, contained jewelry and other articles." She nowhere states that the wife's trunk contained all these articles, or any specified portion of them. She knew nothing of the alleged robbery, and not knowing which of the trunks had been opened, she could not say that the one said to have been robbed contained the articles mentioned by her. The amount of her proof is, that her brother and his wife had these things in *their trunks;* and was of little effect in the cause, except to show that they had owned such articles, and the value of some of them. It is a case, then, where it does not appear, that the plaintiff had other proof to which he might have resorted, as to the contents of this particular trunk.

A question sometimes arises, as to the extent to which a party will be allowed to testify; that is to say, what articles he may prove to have been in his trunk. As a general rule, a landlord is liable only for what is considered baggage, and not for every article that the guest may choose to carry with him. But what is the baggage of a traveller, depends so much on circumstances, such as his position, habits, taste and mode of living and travelling, that it is easier to say, in a given instance, whether an article is embraced, than to lay down a general rule that will apply to all cases. We do not think the term embraces merchandize or other valuables not designed for use, or personal convenience, on the journey. It is not within the implied contract of the landlord, that he will be responsible for all goods which may be brought to his house, merely because they happen to be in a trunk. If so, it is not easy to

define to what extent the power of the guest may be abused, and advantage taken by him, as against the landlord. 10 *Watts,* 335. 25 *Wend.,* 459. *Story on Bailments,* 499. 11 *Humph.,* 419. 12 *Georgia,* 224. 9 *Wend.,* 115. 6 *Hill,* 589.

In the present case, we find that the trunk contained silver knives, forks and spoons. For them the appellees were not responsible. If a party may recover for these, why may he not for many dozens of the same articles, or for any description and amount of plate? This we take to be in accordance with the reason of the case, and is supported by authority. But, for personal ornaments, appropriate for a traveller's wardrobe, a landlord may be liable. And, inasmuch as the answer to the second interrogatory, contained evidence admissible under the pleadings, namely, proof of the jewelry, as part of the contents of the trunk, it should not have been altogether excluded.

It was contended, on the part of the appellees, that this answer also contained evidence of the robbery, and that the plaintiff being incompetent for that purpose, it should have been rejected for that reason. We are not prepared to say, that a guest cannot, in any case, prove the loss of his baggage, by his own oath. The general rule is, that he cannot; but instances may occur, where the reception of such testimony would be necessary to the ends of justice, and also within the reason of the rule which governs this class of cases. For example, it is in proof in this record, that the chamber-maid had a master-key to the rooms under her care; and that there were notices in the rooms for lodgers to leave their keys at the office. What security would locking the door by the guest afford against the improper use of the master-key, or of the one left at the office ? If the room be entered and robbed, in his absence, and no signs of violence appear, ought the guest to be required to produce other proof of a fact that it is quite manifest he cannot so establish ? And yet it is plain, that under this hypothesis he might be injured by the very agents of the landlord, who, of course would not testify against themselves. The case supposed, would be within the reason assigned by Ch. Baron Gilbert, "that no person can be supposed present in such transactions to give their evidence." These remarks

Pettigrew vs. Barnum, *et al.*

are made, not as applying to this action, but to avoid a con-
clusion hereafter. As we have said, the plaintiff had offered
other evidence of the robbery, and his own oath, if admissi-
ble under a different state of case, was not necessary for that
purpose. And so also we may add, in reference to this depo-
sition, as containing evidence of the value of the jewelry, if
relied upon for that purpose, that the party's oath of the value,
if received at all, can only be where the nature of the subject
and the necessity of the case are within the reason of the ex-
ception. There appears to be some diversity among the cases,
and as this record does not need any expression of opinion by
us, there being other proof of the fact by the plaintiff's sister,
we confine ourselves to admitting the answer to the second in-
terrogatory, as evidence of the contents of the trunk.

There is, to be sure, difficulty, sometimes, in separating
what is admissible from what the law rejects, so as to enable
the party objecting to bring the precise point before the court,
and this is more likely to occur in offering interrogatories and
answers under a commission. Where, however, it can be
done it should be, as in *Calvert vs. Coxe,* 1 *Gill,* 95. If the
matters are so blended as to be inseparable for the purpose of
distinct objections, the party may accomplish his object by
asking an instruction as to the applicability of the evidence,
and its effect on the case or any branch of it. *Pegg vs. War-
ford,* 7 *Md. Rep.,* 582. *Carroll vs. Granite Manf. Company,*
11 *Md. Rep.,* 400.

Without expressing any opinion upon the law of the plain-
tiff's second prayer, we may remark, that if correct, its refusal
furnishes no sufficient ground for reversing the judgment.
His first prayer, granted by the court, had given the law to the
jury, as favorably as he could have desired, deciding, among
other points, that the landlord's liability was not limited by the
notice; whether it was read or not, therefore, could make no
difference. It has been frequently ruled, that a prayer, the
subject of which is covered by previous instructions, ought not
to be granted, because such repetitions are calculated to em-
barrass the jury and may mislead them. *Mutual Ins. Co.,
vs Cohen,* 3 *Gill,* 459. *Stokes vs. Saltonstall,* 13 *Peters,* 181.

*Judgment reversed, and procedendo ordered.*