The question on the record by the bill of (203) exceptions is one of much practical importance in these days of increased and increasing traveling in stages, railroad cars, and other modes of conveyance. Though not a new question in some of the American States, it is now for the first time brought before us, and we must decide it upon the principles of evidence settled and established in this State.
It is an ancient and fundamental rule of evidence in the common law that"nemo in propria cause, testis esse debet." 1 Bl. Com., 443. Exceptions to this rule have, perhaps, always been admitted as to matters which are auxiliary to the trial, and which are in their nature preliminary to the principal subject of controversy, and are addressed to the court. Thus a party may make affidavit to the materiality of a witness; of diligent search made for a witness, or for a paper alleged to be lost; of his inability to attend; of the death of a subscribing witness; and cases of the like kind. 1 Greenleaf Ev., sec. 349. But upon the trial of *Page 124 
the merits of the cause, on an issue before the jury, the maxim that "no one is allowed to be a witness in his own cause" has come down to us from the earliest period of the common law, almost intact. The first innovation made upon it arose out of the Statute of Winchester, 13 Ed. I., ch. 1, commonly called the statute of "Hue and Cry," which gave to a party robbed an action on the case for damages against the hundred. In such action the plaintiff was allowed to be a witness on his own behalf to prove the loss. This testimony was said to have been admitted on the ground of necessity, and Lord Kenyon, in Evans v. Williams, 7 Term, 481, in a note, said that originally it was only in an action on that statute that it was admitted on such ground. It was, no doubt, though, as the statute gave the action to the party robbed, and as he could very rarely prove his loss except by his own oath, a just and liberal construction of it gave him also the privilege of being a witness for (204) himself. The change of the rule of evidence in cases of this kind may, therefore, very properly be considered as having been effected by statutory enactment, rather than by a deviation from it at common law. The breach in the integrity of the maxim being, however, once made, it was followed in course of time by at least one other innovation for which no statute can be held responsible. Thus, in 12 Vin. Abr., 24, Pl., 32, it is laid down that in a trial at Bodmyn, coram Montague, Baron, against a common carrier, a question arose about the things in a box, and he declared that this was one of those cases where the party himself might be a witnessex necessitate rei. These are the only cases which have been called to our attention as having been decided by the English common-law courts; and of these it may be remarked that one was a decision at nisi prius and the others were evidently the offspring of a statute. In some of the American States the decision made by Baron Montague has been adopted, and applied to the baggage of a traveler lost by the negligence of the carrier. (SeePettigrew v. Barnum, 11 Md. 434; Johnstone v. Stone, 11 Hump. (Tenn.), 419; Herman v. Drinkwater, 1 Green. (Me.), 27, while in one State at least it has been rejected. See Snow v. R. R., 12 Met. (Mass.), 44.)
In North Carolina the common-law rules of evidence have been generally very strictly observed; and we are not aware that the maxim upon which we are commenting has been departed from as testimony intended for the jury, except in cases where the innovation has been introduced by statute. Thus, in what is generally known as the book-debt law, a party may prove by his own oath the items of his account to the amount of $60 only. Rev. Code, ch. 15. In cases of this kind there was a very strong necessity for the admission of such testimony, but the courts did not feel themselves at liberty to change the settled rule of (205) evidence, and it remained unaltered until 1756, when the act *Page 125 
entitled "An act to ascertain the method for proving book debts" was passed. (See Potter's Revisal, ch. 57.) In admitting the witness to testify for himself, it is worthy of remark that the act has carefully guarded the other party against the danger of a corrupt or perjured testimony. The account must be a book account; there must be no other means of proving the delivery of the articles than by the book and his oath; it must be for articles delivered within the last two years, and he must swear that the book contains "a true account of all the dealings, or the last settlement of accounts between them."
The necessity for admitting a plaintiff as a witness to prove the contents of his trunk, in an action against a railroad company or other common carrier for its loss, is not greater than it was in the case of a book debt; and as in the latter named case the courts felt themselves bound to leave it to the Legislature to supply a remedy for the mischief, so we must do in the case now before us. Our duty as a court is to ascertain, in each case that comes before us, what the law is, and then to decide accordingly; and if in the progress of society new circumstances or combinations of circumstances arise to which there is no principle of the common law applicable, we cannot assume the functions of legislators to devise one. That is the province of the Legislature, and we have neither the inclination nor the right to interfere with it.
The judgment of the court below must be
Affirmed.
(206)