Salvatore James RAFFONE

v.

Sgt. Daniel SULLIVAN, Milford Police
Department, et al.

Civ. No. N–76–141.

United States District Court,
D. Connecticut.

Sept. 8, 1977.

Bruce W. Thompson, New Haven, Conn.,
for plaintiff.

Robert E. Beach, Jr., Asst. State's Atty., New Haven, Conn., Barney Lapp, and Daniel R. Schaefer, Asst. Attys. Gen., Hartford, Conn., for defendants.

## RULING ON DEFENDANT GRASSO'S MOTION TO DISMISS

NEWMAN, District Judge.

In this civil action for damages brought under 42 U.S.C. § 1983 plaintiff, a state prisoner, claims that he was illegally abducted from the state of Florida and brought to Connecticut to stand trial while he was in the process of fighting extradition from Florida to Connecticut. He was subsequently convicted in Connecticut and is now incarcerated here. Defendant Ella Grasso, Governor of the State of Connecticut, moves to dismiss on several grounds. Since her argument that the complaint fails to state a cause of action is persuasive, there is no need to discuss the other grounds raised, and plaintiff's discovery motions become moot.

Most of the cases that have discussed the issue have held that there is no cause of action under § 1983 for an improper or even illegal extradition,[1] although there is some authority to the contrary.[2] Since our Circuit has not ruled on the issue, a fresh look is in order.

The Constitution imposes upon each state an obligation to extradite a fugitive found within its borders to the state from which he has fled upon proper demand from that state. This constitutional provision, Art. 4, § 2, cl. 2,[3] is implemented by 18 U.S.C. § 3182.[4] Yet neither the constitutional provision nor the federal statute establishes the details of the procedure for effecting extradition. This task has been left to the states themselves. Almost all the states, including both Florida[5] and Connecticut,[6] have adopted the Uniform Criminal Extradition Act. This statute sets up certain procedural safeguards for the benefit of the accused, including a requirement that he be

taken forthwith before a judge of a court [having criminal jurisdiction in this the sending] state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court shall fix a reason-

1. *Waits v. McGowan,* 516 F.2d 203 (3d Cir. 1975); *Hines v. Guthrey,* 342 F.Supp. 594 (W.D.Va.1972); *Johnson v. Buie,* 312 F.Supp. 1349 (W.D.Mo.1970); *Campbell v. Smith,* 308 F.Supp. 796 (S.D.Ga.1970); *Crawford v. Lydick,* 179 F.Supp. 211 (W.D.Mich.1959), aff'd per curiam, 280 F.2d 426 (6th Cir. 1960), cert. denied, 364 U.S. 849, 81 S.Ct. 93, 5 L.Ed.2d 72 (1960).

2. *Sanders v. Conine,* 506 F.2d 530 (10th Cir. 1974); *Picking v. Pennsylvania R. Co.,* 151 F.2d 240 (3d Cir. 1945), cert. denied, 332 U.S. 776 (1947). The issue was left open in *Pierson v. Grant,* 527 F.2d 161 (8th Cir. 1975).

3. "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

4. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive author-

ity of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

5. West's F.S.A. §§ 941.01 to 941.30.

6. Conn.Gen.Stat. §§ 54–157 to 54–185.

able time to be allowed him within which to apply for a writ of habeas corpus.[7] Violation of these safeguards may give rise to a cause of action for false arrest or false imprisonment in the asylum state, whose law was breached.[8] But since the safeguards derive from state rather than federal law, § 1983 does not provide a remedy for their breach.

■ But wholly apart from whatever procedural protections a fugitive may have under the law of the state that gives him asylum, he has some degree of protection under the Fourteenth Amendment as well. The time-worn rule that illegality in bringing a defendant into a jurisdiction does not impair the power of that jurisdiction to prosecute him [9] has given way in our Circuit to more modern conceptions of due process. *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974). *Toscanino* applied the rule of *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), to hold that due process would be violated if a defendant had been brought into the prosecuting jurisdiction "as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." 500 F.2d at 275. Conduct sufficiently "shocking to the conscience" to require invalidation of a conviction on due proces grounds also supports a cause of action under the Civil Rights Act. *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973), *cert. denied sub nom. Employee-Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). If plaintiff had alleged brutal or outrageous conduct comparable to that alleged in *Toscanino,* he would have stated a cause of action.

■ But even on the most liberal reading of this *pro se* complaint, see *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff has not alleged this type of conduct. The most the complaint alleges is that plaintiff was taken into custody on the extradition warrant and transferred to the custody of Connecticut officials before he had exhausted his statutory challenges to extradition. The proceedings, though irregular if the allegations of the complaint are accepted as true, lack "any allegation of that complex of shocking governmental conduct sufficient to convert.an abduction which is simply illegal into one which sinks to a violation of due process." *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 66 (2d Cir. 1975), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). As in *Lujan,* and in contrast to *Toscanino,*[10] "but for the charge that the law was violated during the process of transporting him" to Connecticut, plaintiff "charges no deprivation greater than that which he would have endured through lawful extradition." 510 F.2d at 66. See also *United States v. Lira,* 515 F.2d 68 (2d Cir. 1975), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975).

■ It is conceivable that there are some circumstances short of outright governmental brutality that could give rise to a civil rights cause of action for illegal extradition. If plaintiff had been acquitted upon his rendition to Connecticut, and if he could show that he was removed from Florida to Connecticut without probable cause, he

---

**7.** Section 10 of the Uniform Criminal Extradition Act.

**8.** Section 11 of the Uniform Criminal Extradition Act provides for criminal sanctions for delivering a person to the demanding state in violation of the Act.

**9.** *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1888).

**10.** *Toscanino* characterized the exclusionary rule as the *only* effective deterrent to undisciplined law enforcement activities. 500 F.2d at 276–77 n.6. *Lujan,* on the other hand, cited the

availability of other deterrents, including "the financial cost of the operation, the possibility of alienating other nations, and the risk that the kidnappers would be prosecuted in a foreign territory for their offense." 510 F.2d at 68 n.9. *Lujan* also mentioned in passing the possibility that the abductors "might be liable in a foreign court for civil damages as well." 510 F.2d at 64–65 n.3. The analogue in the federal context domestically might be a civil rights cause of action under the circumstances outlined in the text, *infra,* or it might be a common law civil action in the asylum state for false arrest or false imprisonment.

might have a Fourteenth Amendment claim for the deprivation of liberty he suffered from the illegal arrest, detention, and transportation to Connecticut. *Cf. Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). But wholly apart from the problems plaintiff would encounter if he attempted to challenge probable cause in the face of an unreversed judgment of conviction,[11] he does not even allege that the arrest and subsequent extradition were effectuated without probable cause. Under these circumstances he has no claim for damages under the Civil Rights Act.

Accordingly, the complaint must be dismissed for failure to state a federal claim, without prejudice to whatever rights the plaintiff may have under Florida or Connecticut law in the courts of those states. Judgment may enter for all defendants.

11. In *Pouncey v. Ryan,* 396 F.Supp. 126 (D.Conn.1975), this Court adopted the rule that a plaintiff cannot challenge probable cause in a damage action in the face or a valid judgment of conviction. The reasoning in *Pouncey* was not that the plaintiff was collaterally estopped by virtue of the state conviction, for the issue of the legality of the arrest was neither impliedly nor actually determined in the state criminal proceeding. 396 F.Supp. at 128 n.2. Rather the Court adopted as the § 1983 rule the common law defense to liability for false arrest or false imprisonment where the plaintiff's conviction stands.

Other courts have applied collateral estoppel doctrine to arrive at the same result. *See, e. g., Covington v. Cole,* 528 F.2d 1365 (5th Cir. 1976); *Shank v. Spruill,* 406 F.2d 756 (5th Cir. 1969); *Watson v. Devlin,* 167 F.Supp. 638 (E.D. Mich.1958). In *Shank,* for example, the petitioner claimed that Georgia officials forcibly brought him from Florida to Georgia to stand trial for a Georgia offense. The court held that his civil rights cause of action for improper arrest could not be maintained as long as his conviction stood. *See also Campbell v. Smith,* 308 F.Supp. 796 (S.D.Ga.1970) (conviction in the receiving jurisdiction shows probable cause and cures any defect in probable cause for extradition). It is not entirely clear why the doctrine of collateral estoppel is appropriate

unless the issue of the validity of the arrest was *actually* litigated in the state criminal proceeding. *See Jackson v. Official Representatives and Employees of the Los Angeles Police Dept.,* 487 F.2d 885 (9th Cir. 1973) (validity of arrest never considered on its merits; thus judgment of conviction did not collaterally estop state prisoner in civil rights suit); *cf. Guerro v. Mulhearn,* 498 F.2d 1249, 1254–55 (1st Cir. 1974); *Mastracchio v. Ricci,* 498 F.2d 1257, 1261 n.3 (1st Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975), and *Mulligan v. Schlachter,* 389 F.2d 231 (6th Cir. 1968), all indicating *in dictum* that false arrest might constitute a wrong compensable under the Civil Rights Act without regard to the outcome of the state criminal proceedings.

Since the *Pouncey* rule is *stare decisis* in this Court as to challenges to arrest while the judgment of conviction stands, it is appropriate to apply it to the present case. The only distinctions between a simple arrest within the jurisdiction by officers of the prosecuting state and an arrest made in another state for the purposes of extradition—that the arrestee usually travels a greater distance, and that the need for on-the-spot judgments by arresting officers is not generally as great—are too tenuous to require a different rule for extraditions.