**William (Bob) BROWN,**
**Plaintiff-Appellant,**

v.

**Wiley C. EDWARDS and All Other Constables In the State of Mississippi,**
**Defendants-Appellees.**

**No. 82–4216.**

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1984.

Jim Waide, West Point, Miss., Jacqueline Estes, Tupelo, Miss., for plaintiff-appellant.

William Ryan Hood, Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before GARZA, RANDALL and GAR-WOOD, Circuit Judges.

GARWOOD, Circuit Judge:

At issue in this section 1983 action for damages, injunctive relief, and a declaratory judgment, is the Mississippi fee system for constables, Miss.Code Ann. § 25–7–27 (Supp.1982),[1] which the appellant claims im-

---

1. The text of the statute is as follows:

"Marshals and constables shall charge the following fees:

"(a) A uniform total fee in all cases, civil and criminal, whether contested or uncontested, which shall include all services in connection therewith, except as hereinafter stated, each . . . . . . . . . . . . $10.00

"Provided, however, that in all cases where there is more than one (1) defendant, for service on each additional defendant . . . . . . . . . . . . . . . . . . . . . . . $3.00

"(b) Provided, however, that after final judgment has been enrolled, further proceedings involving levy of execution on judgments, and attachment and garnishment proceedings shall be a new suit for which the marshal or constable shall be entitled to the following fee . . . . $7.00

"(c) Summons coroner's inquest, to be paid as the coroner's fee in the same case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3.00

"(d) Conveying a person charged with a crime to jail, each mile . . . . . . . . . . . . . . $.15

"To be paid out of the county treasury on the allowance of the board of supervisors, when the state fails in the prosecution or the person is convicted but is not able to pay the costs.

"(e) For other service, the same fees allowed sheriffs for similar services.

"(f) For serving all warrants and other process, attending all trials in state

pairs his right to an objective probable cause determination as required by the Fourth Amendment and the due process clause of the Fourteenth Amendment by compensating constables ten dollars for each charge they make which results in a conviction.[2] The district court dismissed the plaintiff-appellant's suit on motion for summary judgment partly on procedural grounds and partly on the merits. For the reasons stated below we affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

On July 18, 1981, the plaintiff-appellant, William (Bob) Brown was target shooting with friends and family on or near a county road in Clay County, Mississippi when approached by a Clay County constable, Wiley C. Edwards, the defendant-appellee. Brown had a pistol which he then put, or began to put, in his pocket. While the affidavits of Brown and Edwards, filed below, relate quite differing particulars, it appears undisputed that something of a verbal altercation ensued between Brown and Edwards and that Edwards attempted to place Brown under arrest for carrying a concealed weapon without a permit and/or for public profanity. After arrival of a deputy sheriff whom Edwards had called for assistance, Brown's arrest was consummated and Brown was taken by the deputy to jail, where he was released, apparently without delay, the deputy signing his bond. There apparently was no warrant for Brown's arrest.

Constable Edwards charged Brown with carrying a concealed weapon, public profanity, and resisting arrest. At the trial, which took place August 18, 1981, before justice of the peace Andrews, Brown pleaded guilty to the charges of public profanity and resisting arrest. The concealed weapon charge was dismissed by the justice of the peace at the same court appearance, on the motion or with the consent of the prosecuting attorney and without a trial.[3] The jus-

cases in which the state fails in the prosecution, to be paid out of the county treasury on the allowance of the board of supervisors without itemization, subject however to the condition that the marshal or constable must not have overcharged in the collection of fees for costs, contrary to the provisions of this section, annually not to exceed . . . . . $500.00"

2. The source and conditions of payment of the ten-dollar fee provided by paragraph (a) of section 25-7-27 (the only fee which the parties or the district court have treated as relevant here) are not clearly stated in the statutes. Appellant submitted below the affidavit of Euland Andrews, the justice of the peace in the state proceedings concerning appellant involved here, stating that in criminal cases this fee is solely payable from court costs assessed against a convicted defendant, when and if these are collected by the justice of the peace from the defendant (costs apparently not being assessable against the state). Similarly, opinions of the Mississippi attorney general, filed below by appellee, indicate that in a criminal case this fee is payable only out of court costs assessed against and collected from the defendant. The district court concluded that in a criminal case the fee is payable only in the event of conviction. We note that under paragraph (f) of section 25-7-27 the county may also pay constables up to $500 per year "without itemization" to cover services "in state

cases in which the state fails in the prosecution." This is apparently what the Andrews affidavit refers to in stating "a constable also earns $500 per year lump sum compensation from the county to cover cases in which the state fails in the prosecution."

The record further indicates that the justice of the peace is not obligated to assess costs (or this item of costs) in all convictions, particularly where indigents are involved.

There was some dispute in the district court over whether the ten dollars was to be calculated per separate charge or per court proceeding. The district court adopted the view, relying on a Mississippi attorney general's opinion, that a "constable is entitled to only one $10.00 fee per incident (or per arrest) regardless of the actual number of charges filed against the arrestee." In this case, however, Constable Edwards received ten dollars for each of the two charges to which Brown pleaded guilty. We therefore proceed in our analysis of the Mississippi fee system on the assumption that it is regularly applied on a per-charge basis.

3. Brown's affidavit states that he pleaded guilty to the first two charges because he assumed that the court would believe the constable's version of the facts and did not hire a lawyer because the amount of the potential fine did not make doing so worthwhile. Brown was advised of his right to counsel. Justice of the peace Andrews' affidavit states that Edwards did not object to the dismissal of the concealed

tice of the peace convicted Brown on his plea of guilty, without hearing testimony, fined Brown $50 for resisting arrest and $25 for public profanity, and assessed $10 court costs on each of these two offenses. Brown paid the fines and costs to the justice of the peace, apparently without any delay, and thereafter the justice of the peace paid Edwards $20 as his fees under section 25–7–27(a).

Brown then instituted this section 1983 action against Edwards,[4] in which he argues that the Mississippi fee system for constables,[5] established by Miss.Code Ann. § 25–7–27, which compensates them ten dollars for each charge which results in a conviction, is unconstitutional. He urged three grounds before the district court in support of this conclusion. First, the statute unconstitutionally impairs constables in making "an objective determination of whether a person should be arrested or charges made against him"; second, it encourages them to file multiple charges, thereby maximizing their chances for receiving fees; and third, it gives them a financial incentive to testify against those arrested to increase the chances for convictions.

■ The district court opinion considered each of these three grounds in light of each of the three offenses with which Brown was charged. Since Constable Edwards had not testified against Brown on any of the three offenses, the district court held that Brown had no standing to complain that the statute impermissibly biased constables' testimony.[6] It held with respect to the resisting arrest and public profanity offenses that the collateral estoppel effects of Brown's guilty plea barred him from urging his claims that the Mississippi statute unconstitutionally impaired objective determinations of probable cause and encouraged charge "stacking" as to those two offenses.

The district court did reach the merits of Brown's impairment of probable cause de-

weapon charge, though "[i]n the past, Constable Edwards has sometimes protested violently when I dismissed charges."

4. Brown's complaint states that Constable Edwards "is sued individually and in his official capacity. Also, Plaintiff intends to make this a class action against all constables now elected in the State of Mississippi." However, only Edwards was served, and prior to the district court's ruling Brown advised the district court that the class action aspect of the case was being abandoned. No class was ever certified. Accordingly, we treat the case, as the parties ultimately did below and do here, as one in which Edwards is the only defendant.

5. Mississippi constables are elected county officials, and have the power of arrest, including the power within their respective counties to arrest without a warrant for offenses committed in their presence. Miss.Code Ann. §§ 19–19–1; 99–3–1; 99–3–7. *See Smith v. State,* 228 Miss. 476, 87 So.2d 917, 919 (1956). Their duties include attendance on the justice courts in their district, executing judgments of such courts in criminal cases, and execution of civil and criminal process. Miss.Code Ann. §§ 19–19–5; 19–19–7. Further, "[i]t shall be the duty of every constable to keep and preserve the peace within his county ..." and "... to give information, without delay, [t]o some justice of the peace or other proper officer ... of every violation of the penal laws which may come to

his knowledge ...." Miss.Code Ann. § 19–19–5. "After an officer has witnessed a misdemeanor, it is his duty to then and there arrest the offender." *Smith v. State, supra,* 87 So.2d at 919. A constable "who shall fail to discharge any of the duties required of him" is subject to fine. Miss.Code Ann. § 19–19–15.

6. That appellant was entitled to no relief of any kind in respect to his complaint that section 25–7–27 encouraged constables to give false testimony is clear. Since no testimony was given by any constable as to any of the offenses in question, the district court's determination that appellant lacked standing to complain of this aspect of the statute was correct. *See Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40–46, 96 S.Ct. 1917, 1925–1928, 48 L.Ed.2d 450 (1976). Moreover, even if Edwards had testified in the state proceedings, it seems obvious no complaint could be made if the testimony were true, and if it were false it would nonetheless be absolutely privileged in a section 1983 action against him, which is all this suit is. *Briscoe v. Lahue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). *See also United States v. Murphy And Morgan,* 16 Pet. 203, 205, 211, 10 L.Ed. 937, 938, 940 (1842) ("... a person who is to receive a reward for or upon the conviction of the offender ... is universally recognized as a competent witness ..."). We will not further notice this aspect·of appellant's argument concerning section 25–7–27.

termination and charge "stacking" arguments with respect to the concealed weapon offense, the charge concerning which had been dismissed. The court held that the statute did not abridge the Fourth Amendment because the statute encourages arrests not merely where probable cause exists but where the "totality of circumstances [make] it appear highly probable that a conviction will be had and that [the constable] can earn his fee." The district court also concluded that the intervention of a neutral judge distinguished the case from the Supreme Court decisions in *Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977); *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); and *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and that the fee system, therefore, did not violate due process.[7]

## II.

## THE LAW

### A. Availability of Equitable Relief

We consider *sua sponte* the issue of Brown's standing to seek equitable relief since it raises questions relevant to our jurisdiction. Brown, individually, is the sole plaintiff in this case. Constable Edwards is the sole defendant. So far as the record reflects, Brown has been involved in but a single, discrete incident which might implicate the statute respecting which he seeks equitable relief. The statute does not prohibit or restrict any conduct, nor does it authorize either the making or manner of making of arrests or criminal charges. Brown's complaint does not allege, and nothing in the record suggests, that Brown is in any way likely, or more likely than any other Mississippian, to be again subjected to arrest or charging by any Mississippi constable. Our standing inquiry in this respect

is governed by *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). There, Lyons sought damages arising out of injuries received from a choke hold administered by the Los Angeles police. He also sought an injunction and declaratory relief against the city to prohibit choke holds "except in situations where the proposed victim of said control reasonably appears to be threatening immediate use of deadly force" and to declare that choke holds are a *per se* violation of constitutional rights if administered in the absence of the threat of immediate use of deadly force. Reversing the district court's dismissal of these claims, the Ninth Circuit held that Lyons had standing to assert them. On remand the district court granted Lyons a preliminary injunction enjoining choke holds "under circumstances which do not threaten death or severe bodily injury." At ——, 103 S.Ct. at 1664, 75 L.Ed.2d at 683.

The Supreme Court reversed, holding that Lyons did not have standing to seek equitable relief. It reasoned as follows:

"That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. [at ——, 103 S.Ct. at 1667, 75 L.Ed.2d at 686.]

"....

"If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October, 1976, then he has not met the requirements for seeking an injunction in a federal court...."

---

**7.** In each of these opinions the Supreme Court found that a criminal defendant was improperly subjected to judicial action by a judicial officer with a pecuniary interest in the decision made, which deprived the defendant of due process. *See* text, *infra.* This Court applied the same principles to hold unconstitutional, as

operated in criminal cases in Hinds and DeSoto Counties, Mississippi, and in the state as a whole in civil cases, the "fee" system of compensating justices of the peace for performing judicial duties in cases pending before them. *Brown v. Vance,* 637 F.2d 272 (5th Cir.1981).

[*Id.* at ——, 103 S.Ct. at 1668, 75 L.Ed.2d at 688.]

The Court specifically pointed out that Lyons' "lack of standing" to seek equitable relief respecting the complained of practice rested "on the speculative nature of his claims that he will again experience injury as the result of that practice *even if continued.*" *Id.* at ——, 103 S.Ct. at 1669, 75 L.Ed.2d at 689 (emphasis added). The *Lyons* Court also relied for its lack of standing determination on its earlier decisions in *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), and *Ashcroft v. Mattis,* 431 U.S. 171, 172–73 n. 2, 97 S.Ct. 1739, 1740 n. 2, 52 L.Ed.2d 219 (1977), in which it was held that standing to seek declaratory relief respecting a challenged statute was not established *merely* by the fact that the plaintiff had on a single previous occasion been harmed by the statute's application, absent a realistic likelihood that the statute would in the future be applied to the detriment of the particular plaintiff in the action. *Lyons,* —— U.S. at —— – ——, 103 S.Ct. at 1666–67, 75 L.Ed.2d at 685–86. *Golden* and *Ashcroft* are likewise applicable here.

 Like the plaintiff in *Lyons,* Brown is attacking a policy which allegedly encourages police officers to deprive citizens of their constitutional rights and is claiming to have been injured by police conduct affected by this policy. Like the plaintiff in *Lyons,* however, Brown also fails to "establish any real and immediate threat" that he will again be injured in such a way. Thus, he lacks standing to seek injunctive or declaratory relief.

## B. Brown's Claim for Damages

Brown, however, in addition to declaratory and injunctive relief, also sought, and obviously had standing to seek, damages based on his claim that his arrest and the charges filed against him constituted an unconstitutional invasion of his rights in that, as the arresting and charging officer was subject to compensation for these actions under the "fee" system of section 25–7–27(a), Brown was deprived of the objec-

tive probable cause determination required by the Fourth Amendment and of the due process of law guaranteed by the Fourteenth Amendment. Brown sought actual damages consisting of "the total amount of his fine and the mental anxiety he suffered on account of the arrest." Alternatively, he sought nominal damages. No punitive damages were sought.

### 1. The Applicability of Collateral Estoppel

As noted, the district court held that the collateral estoppel effects of Brown's guilty plea to the charges of public profanity and resisting arrest barred his section 1983 claim that his constitutional rights were violated by his being arrested and prosecuted for those offenses. Of course, Brown was also arrested for and charged with the concealed weapon offense, as to which there was no determination of his guilt, and hence no collateral estoppel or *res judicata* arose from the disposition of that charge, as the district court recognized. With respect to Brown's arrest claims, however, it might be argued that there was only one arrest for all offenses, and that collateral estoppel from the profanity offense plea and conviction establish that single, indivisible arrest to have been lawful, so that arrest-related claims as to *all* offenses, including the concealed weapon offense as to which there was no conviction, are barred. We do not decide that question, however, because we hold that neither *res judicata* nor collateral estoppel bars Brown's making his arrest claims with respect to any of the offenses and that the district court erred insofar as it held to the contrary.

We do not doubt that under principles of collateral estoppel (and perhaps *res judicata* ) the outcome of or determinations made in state court criminal proceedings may, in a proper case, bar the state court defendant from subsequently relitigating the same matters in a section 1983 suit. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). We have sev-

eral times so held. *See* decisions cited in *Richardson v. Fleming,* 651 F.2d 366, 374 (5th Cir.1981). Nevertheless, it appears from *Allen, Kremer,* and, most recently, *Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), that the application of collateral estoppel (or *res judicata*) in such a setting is derived from 28 U.S.C. § 1738, pursuant to which the federal court will give no greater preclusive effect to the state court judgment than would the courts of the state rendering it.

■ The general rules of collateral estoppel and *res judicata* applicable in Mississippi are summarized in *Dunaway v. W.H. Hopper & Associates, Inc.,* 422 So.2d 749 (Miss. 1982). We think it evident that neither doctrine is applicable here to bar civil damage actions in respect to arrest for any of the offenses. The criminal and civil causes of action are different. The validity of the arrest was not *actually* litigated in the state court proceedings. And, there is nothing necessarily inconsistent between the arrest being illegal and each conviction being proper. This is the general rule. *See Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Albrecht v. United States,* 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). It likewise appears to be the rule in Mississippi. *See Smith v. State,* 228 Miss. 476, 87 So.2d 917, 919 (1956). As there apparently was no search or extra-judicial confession incident to or resulting from the arrest, and certainly no such confession or fruits of search were offered in evidence, the legality of the arrest *could not* have been litigated in the state criminal proceedings. *See Smith v. State, supra.* Hence, the state criminal judgments do not operate, by *res judicata* or collateral estoppel, to bar civil complaints as to arrest in respect to any of

the offenses. *See Greer v. Turner,* 603 F.2d 521 (5th Cir.1979).

It is perhaps a closer question whether collateral estoppel arising from the state convictions bars the section 1983 complaint as to being charged with, as opposed to being arrested for, the public profanity and resisting arrest offenses. Though *res judicata* is plainly inapplicable, since the causes of action are different, it might be argued that collateral estoppel is available on the theory that a conviction necessarily determines the propriety of the charge. But *Haring* and a literal application of the Mississippi test for collateral estoppel as stated in *Dunaway,* 422 So.2d at 751 ("applies only to questions actually litigated in a prior suit") point in the other direction, as it is undisputed that Brown's present claims respecting these charges were not *actually* litigated, or even raised, in the state proceedings. In any event it is clear that Brown's wrongful charge claim respecting the concealed weapon offense must be reached, since there was no conviction of that offense. Although Brown has sought no *actual* damages respecting the alleged wrongful *charging* of the concealed weapon offense, he has sought nominal damages, and, should he prevail, would be entitled thereto. *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978). As we dispose of the merits of Brown's section 1983 claim respecting the concealed weapon charge and do so adversely to him on grounds equally applicable to his claims respecting the profanity and resisting arrest offenses, we pretermit further consideration of the collateral estoppel issue respecting the charging of the latter offenses.

Hence, we now turn to the merits of the damage claim.[8]

**8.** We observe that at least one court has held that a guilty plea bars a subsequent section 1983 suit for wrongful arrest for the same offense, *not* on *res judicata* or collateral estoppel grounds, but rather on the ground that at common law an action for false arrest (more properly, false imprisonment) could not be maintained while a judgment of conviction of the offense for which the arrest was made .re-

mained outstanding. *Pouncy v. Ryan,* 396 F.Supp. 126, 127, 128 and n. 2 (D.Conn.1975); *Raffone v. Sullivan,* 436 F.Supp. 939, 942 n. 11 (D.Conn.1977). *See also Griffen v. City of Mount Vernon,* 553 F.Supp. 1047, 1049 (S.D.N. Y.1983). Other courts have held that an outstanding state criminal conviction bars a section 1983 suit for malicious prosecution by making a similar analogy to the common law

### 2. The Merits of Brown's Damage Claim

Brown states in his complaint:

"Plaintiff's arrest was unconstitutional *because* constables in Mississippi are compensated for each arrest they make, provided conviction results.... Since constables are compensated on 'fee' basis and since they may earn a fee only if they make arrests, collecting no fee when they decide not to make an arrest, their own financial interest in an arrest precludes an objective determination of whether a person should be arrested or charges made against him. The fair play requirement of the United States Constitution Amendment Fourteen and the probable cause requirement of United States Constitution Amendment Four are violated *by the Mississippi statute* under which constables have a financial incentive to make arrests and to charge citizens with crimes.

"The Mississippi fee system of compensation for constables is also unconstitutional because it gives the constables a financial incentive to 'stack' or multiply charges against arrestees. The more charges made, the more fees the constable stands to earn from a case. This violates the fair play and due process requirements of the United [States] Constitution Amendment Fourteen." (Emphasis added.)

The complaint also alleges that "[u]nder the circumstances of this case, a salaried officer, uninfluenced by the fee system of compensation, would not have arrested plaintiff or, at least, would not have charged plaintiff with three separate offenses."

rule that in such an action the plaintiff was required to prove that the criminal proceeding terminated in his favor. *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Tucker v. Duncan,* 499 F.2d 963, 964 (4th Cir.1974). While the common law rule was clear that an outstanding conviction barred an action for malicious prosecution respecting the same charge, Prosser, *The Law of Torts* 838–41 (4th ed. 1971); Restatement (Second) of Torts § 658; 52 Am. Jur.2d, *Malicious Prosecution* § 29; 1 Harper & James, *The Law of Torts* 346 (1956), it appears considerably less plain that such a conviction had the same effect on an action for false arrest. *See* 32 Am.Jur.2d, *False Imprisonment* §§ 100, 120; Prosser, *supra* at 49 n. 24. *Cf.* 1 Harper & James, *supra* at 280–81 (favoring bar except as to matters such as complaint of excessive force in arrest) and at 346 (bar "particularly" as to malicious prosecution action). Perhaps this distinction influenced the holding in *Tucker,* and the implication in *Singleton,* that conviction barred the section 1983 complaint respecting the prosecution but not respecting the arrest. Our attention has not been directed to any decision of this Court expressly addressing whether a state conviction bars such section 1983 actions on grounds *other than res judicata* or collateral estoppel *as such.* However, the *result* in cases such as *Greer v. Turner,* 603 F.2d 521 (5th Cir.1979), appears inconsistent with such a bar as to section 1983 complaints respecting the arrest. Further, the Supreme Court's refusal in *Haring,* respecting a section 1983 action complaining of an illegal search, to expand the preclusive effects of a prior state conviction beyond the requirements of 28 U.S.C. § 1738, arguably points away from the *Pouncy* (and, perhaps, the *Singleton*) approach, though with rather less force than if *Haring* had been squarely faced with, and expressly rejected for section 1983 suits, a common law rule preventing an action for illegal search in those circumstances (and we note in this latter connection that the preclusion mandated for state court judgments by section 1738 is not expressly restricted to that achieved under the *"res judicata"* or "collateral estoppel" labels; nonetheless, it is the law of the convicting state, rather than the general common law, which is looked to under section 1738). Moreover, as elaborated on in the text, *infra,* Brown analogizes his section 1983 suit to a common law action for abuse of process. At common law, a civil damage suit for abuse of process is not necessarily barred merely because the criminal (or other) proceeding involving the allegedly abused process has not terminated favorably to the damage suit plaintiff. *See* 1 Am.Jur.2d, *Abuse of Process* § 7; 1 Harper & James, *supra,* text at 330 n. 3; Prosser, *supra,* text at 856 n. 67; Restatement (Second) of Torts § 682, comment *a.* Further, the concealed weapon charge was dismissed, and hence the section 1983 complaint with respect to that offense is not subject to resolution under the *Pouncy* and *Singleton* approaches. As we dispose of Brown's complaints respecting the concealed weapon offense on the merits, and do so adversely to Brown and on grounds equally applicable to the profanity and resisting arrest offenses, we need not and do not determine whether his section 1983 complaints respecting arrest and prosecution for the latter offenses were subject to bar on account of the convictions for these offenses under the respective rationales of *Pouncy* and *Singleton.*

In general terms the right asserted by Brown is the right to be free, even where probable cause exists, from arrests and charges by an officer who has a financial interest in performing these actions. He argues that this right is supported by the Supreme Court decisions in *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), and *Connally v. Georgia*, 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977). He also analogizes his claim to one based on abuse of process, arguing that the wrong in this case entitles him to recovery under section 1983 because it is a constitutional tort.

It is important to understand that Brown's complaint *never* alleges that his arrest, or charging, was without probable cause.[9] Nor did he otherwise prosecute his case in the district court on the basis of any asserted lack of probable cause. Brown has consistently treated this case exactly as he describes it in the opening sentence of his complaint: "[t]his is an action for damages brought for the purpose of obtaining a judgment that the Mississippi system of compensation for constables is unconstitutional...." As noted, the district court, on cross-motions for summary judgment, reached the merits of Brown's claims respecting arrest and prosecution for the concealed weapon offense and ruled against him, noting that "no material disputed facts" were present. Brown did not seek relief from this ruling in the district court on the basis that there was a fact issue as to existence of probable cause. Nor has Brown claimed on appeal that the summary judgment against him was erroneous because an issue of fact was present with

respect to the existence of probable cause. His sole complaint here as to the merits ruling below is that the district court erred in failing to hold that the system of compensating constables on a fee per-charge basis is unconstitutional, and the only relief he seeks from this Court is our ruling that the district court did err in failing to so hold.[10]

We find Brown's arguments unpersuasive and hold, assuming, as he himself does, that probable cause existed for his arrest, he suffered no constitutional deprivation and is thus not entitled to damages under section 1983.

We begin by examining the Supreme Court decisions on which he relies. In *Tumey v. Ohio* a procedure existed by which violators of the state's prohibition laws were tried without a jury before a village mayor. If the mayor convicted a defendant, he received the fees and costs in the suit in addition to his salary. If he acquitted, he received no additional compensation. The Supreme Court held that this procedure was unconstitutional in that it subjected a defendant to a judge having "a direct, personal, pecuniary interest in convicting," 273 U.S. at 523, 47 S.Ct. at 441, which violated the Fourteenth Amendment right to due process. *Id.* at 532, 47 S.Ct. at 444. *Ward v. Village of Monroeville* involved a system in Ohio in which mayors sat as judges in certain traffic violation cases. Fines, fees, and costs arising out of convictions were not paid to the mayor but to the village treasury, which received a major portion of its income from the proceeds of these cases. In judging the constitutionality of this sys-

---

9. Nor has Brown ever claimed that his arrest or charging either was unlawful under Mississippi law (*see* note 5, *supra*), or was unconstitutional for any reason other than the fact that the arrest and charges were the acts of an officer compensated under section 25–7–27(a) on a "per-charge" basis. And, Brown has not complained of the absence of a warrant, nor has he asserted that Edwards lacked the power of arrest. Further, Brown has never claimed that he is a victim of any class-based discrimination, any discrimination based on exercise of First

Amendment rights or any personal animosity against him on the part of Constable Edwards.

10. The narrow basis on which Brown has framed and prosecuted his suit follows logically from the suit's self-proclaimed purpose, "obtaining a judgment that the Mississippi system of compensation for constables is unconstitutional." If Brown's arrest and charging were unconstitutional for some other reason, such as a want of probable cause, then the suit would not determine the constitutionality of the fee system.

tem, the Court used the same test which it had formulated in *Tumey:*

> "[W]hether the mayor's situation is one 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused ....'" 409 U.S. at 60, 93 S.Ct. at 83.

Applying this standard, the Court held that the system in *Ward* was also unconstitutional. "Plainly that 'possible temptation' may ... exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." *Id.*[11]

This standard was also applied in a slightly different context in *Connally v. Georgia.* There the Court considered the fee system for the issuance of search warrants by justices of the peace in Georgia. They received five dollars for each warrant issued, but nothing if they denied the issuance of a warrant. The Court held, relying on *Tumey* and *Ward,* that this fee system was unconstitutional under the Fourth and Fourteenth Amendments: "It is ... another situation where the defendant is subjected to *what surely is judicial action* by an officer of the court who has 'a direct, personal, substantial, pecuniary interest' in his conclusion to issue or to deny the warrant." 429 U.S. at 250, 97 S.Ct. at 548 (emphasis added).

These cases are fundamentally distinct from the case before us in that each involved a form of *judicial* action. In *Tumey* and *Ward* the mayors were acting as judges in town or village courts. The right to a judge unbiased by direct pecuniary interest in the outcome of a case is unquestionable. It is at the heart of the right to a fair trial by an impartial judge or jury. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Likewise, the magistrate's issuance of a warrant in *Connally v. Georgia* was "surely" judicial action governed by the requirement that a magistrate be "neutral and detached." *See Shadwick v. Tampa,* 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783 (1972). In *Connally* the magistrate's financial incentive to issue warrants prevented him from satisfying this requirement.

By contrast, however, an arrest by a constable is not judicial action, but action under executive or legislative authority. Peace officers are not held to the same standards of impartiality applicable to judges, nor are they in the performance of their duties held to the "neutral and detached" requirement applicable to magistrates who issue warrants. Indeed, to hold peace officers to such a standard would render the warrant requirement largely superfluous.

▇ In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), Justice Jackson noted the importance of

---

11. In *Brown v. Vance,* 637 F.2d 272 (5th Cir. 1981), we relied on *Tumey* and *Ward* to hold the Mississippi fee system for compensating justices of the peace was unconstitutional in counties where there was more than one justice of the peace having jurisdiction of the class of case in question, being all counties as to civil cases and Hinds and DeSoto Counties as to criminal cases. The only compensation received by justices of the peace was a fixed fee per case filed, payable regardless of the disposition of the case, plus, in civil cases, a fee for post-judgment collection proceedings. As peace officers in criminal cases, and the major plaintiff litigants (consumer debt creditors) in civil cases, would naturally tend to file in the court of the justice most likely to convict or to find for the plaintiff, and since the evidence confirmed this and showed "wide" and "star-

tling" filing disparities not otherwise adequately explained, including instances where this "put a judge out of business while his competitor prospered," we held that the system gave the justice a personal financial incentive to convict criminal defendants and to find for civil plaintiffs. We held that accordingly it "deprives criminal defendants of their due process right to a trial before an impartial tribunal," *id.* at 282, and in civil cases made "it difficult, if not impossible, for judges to hold the balance 'nice, clear and true' between plaintiff and defendant." *Id.* at 286. The fee for civil post-judgment collection process was likewise held unconstitutional because it constituted a financial incentive to find for the plaintiff, as the process fee was otherwise unavailable. *Id.* at 286.

having the inference of probable cause "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* at 14, 68 S.Ct. at 369. This statement, quoted so many times by the Court,[12] emphasizes the difference between the roles of magistrate and peace officer. In those circumstances in which the Fourth Amendment permits warrantless arrests, however, a peace officer does assume the function of determining probable cause. Satisfaction of this standard remains a prerequisite to police action, but the requirement of a "neutral and detached" determination of its existence is foregone. Indeed, warrants are required *because* it is realized that peace officers will *not* be neutral and detached.[13] As the Court said in *Coolidge v. New Hampshire,* 403 U.S. 443, 450, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564 (1971), "... policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations ...," and, in *United States v. United States District Court,* 407 U.S. 297, 317, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972), "[t]he Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates." [14] Our opinion in *Brown v. Vance,* 637 F.2d 272 (5th Cir.1981), reflects the same awareness. *Id.* at 282 ("... law enforcement officers have an interest in the outcome of criminal cases in which they participate. Arresting officers naturally seek convictions").

In *United States v. Matthews,* 173 U.S. 381, 19 S.Ct. 413, 43 L.Ed. 738 (1899), it was held that arresting peace officers could properly be entitled to a previously authorized governmental award for the arrest. The Court observed that "the expediency of offering to public officers a reward as an incentive or stimulus for the energetic performance of public duty has often been resorted to." *Id.* at 386. *Tumey,* on which *Ward, Connally* and *Vance* all rest, plainly recognized the validity of this same principle in its statement that:

> "It is further said *with truth* that the legislature of a state may and often ought to stimulate prosecutions for crime by offering to those who shall initiate and carry on such prosecution rewards for thus acting in the interest of the state and the people. The legislature may offer rewards or a percentage of recovery to informers. *United States v. Murphy,* 16 Pet. 203, 10 L.Ed. [937], 938." *Tumey,* 273 U.S. at 535, 47 S.Ct. at 445 (emphasis added).

Moreover, we have held that an arrest which is valid under state law and is otherwise constitutional is not rendered unconstitutional, or contrary to the Fourth Amendment, so as to subject the arresting officer to suit under section 1983, simply on account of the officer's motives in making the arrest. Thus, in *Hunter v. Clardy,* 558 F.2d 290, 292 (5th Cir.1977), we stated:

> "Once probable cause is established, the arresting officer's *collateral* bad faith motive is immaterial since the guilt of the

12. *See, e.g., Gerstein v. Pugh,* 420 U.S. 103, 112–13, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975); *Shadwick v. Tampa,* 407 U.S. at 350, 92 S.Ct. at 2123; *Coolidge v. New Hampshire,* 403 U.S. 443, 449, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564 (1971); *Mancusi v. DeForte,* 392 U.S. 364, 371, 88 S.Ct. 2120, 2125, 20 L.Ed.2d 1154 (1968); *Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958).

13. The Fourth Amendment does not require warrants in order that the probable cause determination be made by a lawyer or to afford an adversary hearing on that issue, as neither is normally necessary to a valid warrant. *See Gerstein v. Pugh,* 420 U.S. at 120–22, 95 S.Ct.

at 866–67; *Shadwick v. Tampa,* 407 U.S. at 348–50, 92 S.Ct. at 2121–23.

14. Accordingly, one lawfully arrested without a warrant is entitled, by virtue of the Fourth Amendment, to a probable cause determination by a magistrate promptly after the arrest, as a condition of any significant pretrial restraint; however, "since the probable-cause standard for pretrial detention is the same as that for arrest," no such determination is required in the case of one whose arrest was pursuant to a valid warrant issued by a magistrate. *Baker v. McCollan,* 443 U.S. 137, 142–43, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979); *Gerstein v. Pugh,* 420 U.S. at 116 & n. 18, 117, 120 & n. 21, 95 S.Ct. at 864 & n. 18, 865, 866 & n. 21.

arrestee is determined by a judicial officer, not by the law enforcement officer."

More recently, we stated in *Smith v. Gonzales,* 670 F.2d 522, 527 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982):

> "... a bad faith motive to 'get' a suspect is irrelevant if the arrest is supported ... by the existence of probable cause. *Hunter v. Clardy,* 558 F.2d 290, 292 (5th Cir.1977).... Once ... probable cause comes into existence, it becomes an officer's duty to arrest the suspect regardless of his personal feelings, good or ill, towards the suspect."

*See also Scott v. United States,* 436 U.S. 128, 136–39, 98 S.Ct. 1717, 1722–24, 56 L.Ed.2d 168 (1978) (indicating that Fourth Amendment determinations are made "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved").

 Brown's complaint is in essence that his procedural, rather than substantive, rights were violated. An arrestee's substantive right is not to be arrested except on probable cause. His procedural right is that furnished by the requirement for a warrant.[15] But a warrant is not required for an offense committed in the presence of the arresting peace officer. *Hunter v. Clardy,* 558 F.2d at 291–92.[16] In that situation, if there is probable cause, the officer's motives are generally irrelevant. At least, the "motive" furnished by the Mississippi fee statute is not sufficiently offensive to itself constitute a deprivation of constitutional rights where the arrest is otherwise validly made without a warrant and on probable cause. We do not suggest that where substantive constitutional rights, apart from those pertaining to the arrest or charging itself, are implicated, the arresting officer's motive may not be determinative. For example, where an otherwise valid arrest is performed because of the officer's intent to

discriminate against the arrestee on account of his race, the arrestee's equal protection rights would be implicated; similarly, the arrestee's First Amendment rights are called into question where the officer's otherwise valid arrest is motivated by his desire to retaliate against the arrestee for making a particular political speech. *See Smith v. Hightower,* 693 F.2d 359 (5th Cir. 1982). Such an arrestee's rights, under section 1983 or otherwise, are not before us in this case, for no such substantive constitutional rights are implicated here.

In light of the common law antecedents of the Fourth Amendment, *see Gerstein v. Pugh,* 420 U.S. at 111, 114–15, 95 S.Ct. at 861, 863–64, it is pertinent to note that the above-referenced rule of *Hunter v. Clardy, supra,* and *Smith v. Gonzales, supra,* accords with the common law doctrine that, where an otherwise valid arrest is made for the purpose of bringing the arrestee before a court or otherwise securing the administration of the law, "an ulterior motive in making it does not make the arrest unprivileged." Restatement (Second) of Torts § 127, comment *a. See also* 32 Am.Jur.2d, *False Imprisonment* § 6 ("An imprisonment which is lawful does not become unlawful because it was prompted by malicious motives ..."). Similarly, in an action for malicious prosecution:

> "... the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued by the defendant without 'probable cause.' This is true even though the defendant is found to have acted with 'malice,' for an improper purpose, since it is the part of a good citizen to bring about the prosecution of those who are reasonably suspected of crime, and the addition of a personal motive should not result in liability for performing a public obligation. The existence of such 'malice' does not create even an inference that probable cause was

---

15. Consequently, where a warrant is required, the existence of probable cause is no substitute. *See, e.g., Coolidge v. New Hampshire,* 403 U.S. at 449–50, 91 S.Ct. at 2029–30.

16. And no "warrant," or third-party probable cause determination, is constitutionally required of the states in respect to the decision to *charge* an offense. *Gerstein v. Pugh,* 420 U.S. at 119, 95 S.Ct. at 865.

lacking." Prosser, *supra* at 841 (footnotes omitted).

The same rules are stated in Restatement (Second) of Torts § 662, comment *b*, § 668, comments *b* and *g*, § 669A; 1 Harper & James, *supra*, 311; 52 Am.Jur.2d, *Malicious Prosecution* § 50.[17]

Brown relies on our decision in *Williamson v. United States,* 311 F.2d 441 (5th Cir.1962), where, on direct appeal and in the exercise of our supervisory power over federal criminal prosecutions (*id.* at 444), we refused to sanction the government's employment of private informers on contingent fee contracts to make illegal whiskey purchases from particularly targeted defendants.[18] *Williamson* has long since been limited to situations in which " 'the specific defendant was picked out for the informer's efforts by a government agent.' " *See United States v. Lane,* 693 F.2d 385, 388 (5th Cir.1982). Assuming, without deciding, that the rule of *Williamson* is constitutionally mandated, and as such may form the basis of a section 1983 recovery, it is nevertheless evident that the Mississippi fee system is wholly without the scope of *Williamson.* Most obviously, the Mississippi fee system totally lacks the crucial element of targeting specific defendants. It does not even target specific offenses or situations. Its application is not ad hoc, but rather general and prospective. Moreover, it is a regular, publicly known method of compensating peace officers, adopted by the Missis-

sippi Legislature, not a secret arrangement made on an individual basis with private parties. *See United States v. Matthews, supra.*[19]

We further observe that the Mississippi fee statute does not purport to authorize arrest (or prosecution) under any condition, or for any purpose, apart from those otherwise authorized and provided by law. Moreover, as fees are only paid if conviction results, such arrest or prosecution incentive as the system may have is plainly diminished in respect to conduct not constituting an offense (and is similarly diminished respecting offenders unable to pay costs).

Brown also analogizes his section 1983 claim to the tort action for abuse of process. The Restatement (Second) of Torts, section 682, describes this cause of action as follows:

> "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."

As the Restatement explains, the existence or nonexistence of probable cause is not relevant to an action for abuse of process:

> "The gravamen of the misconduct for which the liability stated in this Section is imposed is *not* the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the *misuse* of process, no matter how proper-

---

**17.** Note also that in common law defamation actions there was normally an absolute privilege for statements made in the institution of criminal charges. *See Vogel v. Gruaz,* 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158 (1884); *Borg v. Boas,* 231 F.2d 788, 794 (9th Cir.1956); Prosser, *supra* at 781; Restatement (Second) of Torts § 587.

**18.** In *Williamson* Judge Rives (in whose opinion Judge Brown concurred, though also writing separately; Judge Cameron dissented) stated: "... we cannot sanction a contingent fee agreement to *produce evidence against particular named defendants as to crimes not yet committed.* Such an arrangement might tend to 'frame up,' or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit." *Id.* at 444 (emphasis added).

**19.** In upholding a governmental, legislatively authorized award to government officers making an arrest, the *Matthews* Court rejected the proffered analogy to the common law rule against a private party agreeing to compensate a government officer for doing his duty:

> "The broad difference between the right of an officer to take from a private individual a reward or compensation for the performance of his official duty, and the capacity of such officer to receive a reward expressly authorized by competent legislative authority and sanctioned by the executive officer to whom the legislative power has delegated ample discretion to offer the reward, is too obvious to require anything but statement." *Id.* 173 U.S. at 385, 19 S.Ct. at 415.

ly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The *subsequent misuse* of the process ... constitutes the misconduct for which the liability is imposed...." Section 682, comment *a* (emphasis added).

Brown argues that his case is "precisely like a common law suit for abuse of process, except that the abuse of process is the constitutional tort of utilizing the Constable's office for financial gain." He relies upon *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir.1977), in which the Third Circuit held that "[a]n abuse of process is by definition a denial of procedural due process," and that injuries therefrom may be "actionable under section 1983." We conclude, however, that Constable Edwards' arrest of and charges against Brown did not constitute abuse of process depriving him of his Fourth or Fourteenth Amendment rights.[20]

Prosser, *supra,* provides a helpful overview of abuse of process:

"The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, *a wilful act* in the use of the process *not proper in the regular conduct of the proceeding. Some definite act or threat* not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and *there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.* The improper purpose usually

takes the form of coercion *to obtain a collateral advantage, not properly involved in the proceeding itself,* such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and *it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself,* which constitutes the tort." *Id.* at 857 (emphasis added; footnotes omitted).

Similarly, 1 Am.Jur.2d, *Abuse of Process* § 4, states that, to make out a case of abuse of process, the process must have been put to "a use neither warranted nor authorized by the process" and:

"... the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." (Footnote omitted.)

Unless this test is met, "the motive, ulterior or otherwise, is immaterial." *Id.*[21]

■ Assuming, as we do, that Constable Edwards, in arresting and charging Brown, acted on probable cause, the arrest and charging were regular under Mississippi law. It is clear, therefore, that, even assuming Edwards' motivation was to afford himself the opportunity to collect a ten-dollar fee, the criminal process was used exactly as it was intended to be: Brown was regularly arrested and charged in probable cause, and duly tried. That he was exposed to the payment of, and as to two offenses required to pay, court costs, did not compel him "to do some collateral thing which he could not legally and regularly be compelled to do," nor was it a result "without the

---

**20.** *Jennings* is plainly not applicable here, as it involved the prototypical "extortion" abuse of process by public officials. Nothing of the kind is present in this case.

**21.** Essentially the same principles are applicable under Mississippi law. *See Wilcon, Inc. v.*

*Travelers Indemnity Co.,* 654 F.2d 976, 983–84 (5th Cir.1981); *Hyde Construction Co., Inc. v. Koehring Company,* 387 F.Supp. 702, 713–14 (S.D.Miss.1974), *aff'd in part, mod. in part, and rev'd in part,* 546 F.2d 1193, *reh'g denied,* 551 F.2d 73 (5th Cir.1977).

regular purview of the process."[22] There is nothing unusual about a criminal defendant being exposed to court costs in the event of conviction. That the court costs were to be paid to Edwards was likewise contemplated by the Mississippi law, and was not in any sense outside of the purview of the criminal process. Moreover, as Brown has prosecuted his suit, he makes no complaint that Edwards did or threatened to do anything "more than carry out the process to its authorized conclusion" or other than "formal use of the process itself." Brown's suit is not founded on any conduct or "definite act or threat," on the part of Edwards, "not proper in the regular conduct of the proceeding." There were no "negotiations." Edwards is not alleged to have done, attempted or threatened, expressly or by implication, anything in or related to the arrest and charging process which would not have been done in carrying out an arrest and charging wholly unmotivated by the opportunity to collect the authorized fee. Thus Brown's complaint is purely of Edwards' motive. Lack of probable cause is not claimed. As the "motive" relates solely to what is generally authorized and contemplated by Mississippi law and is not related to the personal or class characteristics of the arrestee or to his conduct apart from that giving rise to probable cause for the arrest and charging, there is no abuse of process such as to give rise to a damage action against Edwards under section 1983.

### III.

### CONCLUSION

Brown's suit, as presented, does not show that Constable Edwards violated any of Brown's rights secured to him by the Constitution or laws of the United States.

Hence Brown has not made out a valid section 1983 claim against Edwards.

We emphasize that in this individual suit against the arresting peace officer we deal with a situation in which the lawfulness of the arrest, apart from the statutory fee system, is assumed. There is no claimed lack of probable cause. Nor are we faced with the instance either of a private reward or of a personal animosity against the arrestee. Moreover, we address a factual setting in which neither equal protection nor First Amendment rights, nor other substantive constitutional rights, are implicated. There is no claim that the statutory fees are only collected from certain classes of defendants or in certain types of cases. There is no evidence that the fee system subjects some particular class or group to a disproportionately large number of *unjustified* arrests or prosecutions which would not otherwise occur. There may be circumstances conceivable in which a class of plaintiffs, if they can satisfy the standing requirements, could show injuries of a constitutional nature arising out of the operation of this fee system; however, we are not presented, even remotely, with such a case here.

AFFIRMED.

---

**22.** Likewise, the Restatement (Second) of Torts § 682, comment *b,* makes clear that "an ulterior purpose of benefit to the defendant" from use of otherwise justified process does not constitute abuse of process where the benefit sought is that which naturally results from the process itself: thus, the justified instigation of bankruptcy proceedings does not become abuse of process because it is motivated by the desire for that competitive advantage which naturally comes from a competitor's being bankrupt; and a son's justified lunacy proceedings *against his dangerously insane mother* does not constitute abuse of process merely by reason of being motivated by the expectation that he will legitimately succeed to control of her property after she is committed. *Id.,* illustration 4. The advantage sought must be *collateral* "using the process to put pressure upon the other to compel him to pay a *different* debt or to take some *other* action or refrain from it." *Id.,* comment *b* (emphasis added).